```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────
D'AMICO DRY LIMITED,

                    Plaintiff,         09 Civ. 7840 (JGK)

          - against -                  OPINION AND ORDER

PRIMERA MARITIME (HELLAS) LIMITED,
ET AL.,

                    Defendants.
────────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, D'Amico Dry Limited ("D'Amico") brought this action against Primera Maritime (Hellas) Limited ("Primera") to enforce a money judgment issued by the English High Court of Justice. Primera moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. On December 20, 2010, the Court granted D'Amico leave to amend the complaint, and deemed the motion to dismiss as directed against the amended complaint ("the Complaint").[1] Order, D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., 09 Civ. 7840 (S.D.N.Y. Dec. 20, 2010).

---

[1] The complaint was amended to join a number of additional defendants, whom the plaintiff claims are liable for any liability of Primera. The additional defendants have now all appeared, and have also filed motions to dismiss. Because the absence of subject matter jurisdiction over the claim against Primera is dispositive, it is unnecessary to consider the additional arguments to dismiss by the additional defendants.

I.

On October 13, 2010, the Court held an evidentiary hearing to resolve disputed issues of fact relevant to its jurisdiction. See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 83-84 (2d Cir. 2006) ("[I]n circumstances where subject matter jurisdiction is adequately pleaded but the underlying jurisdictional facts are in question . . . [t]he Court may resolve the factual issues concerning jurisdiction either on a summary judgment motion, if appropriate, or, if not, after an evidentiary hearing."). Rather than presenting live testimony, the parties relied on sworn declarations. Based on the evidence entered into the record at the hearing, the Court finds the following facts:

D'Amico is a charterer of, among other things, "Panamax" dry bulk cargo vessels in international trade. Declaration of Luciano Bonaso at ¶ 3, D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., 09 Civ. 7840 (S.D.N.Y. Oct. 8, 2010) ("Bonaso Decl."). The average daily operating expenses for a Panamax vessel are approximately $12,000; finding a way to offset these expenses, by employing the vessels or otherwise, is thus of paramount importance for D'Amico. Bonaso Decl. at ¶ 5.

Most of D'Amico's vessels are ordinarily committed to use by its customers on a long-term basis. Bonaso Decl. at ¶ 4.

When its long-term commitments become insufficient to employ its fleet fully, D'Amico attempts to employ its vessels on the "spot" – short-term – market.  Bonaso Decl. at ¶ 5.  In addition, D'Amico sometimes enters into derivative financial contracts called "Forward Freight Agreements" ("FFAs") to hedge its chartering business.  Bonaso Decl. at ¶ 6.  FFAs are agreements "to pay the difference between a price agreed today and the future price of moving a product from one location to another, or for the future price of hiring a ship over a period of time."  <u>Brave Bulk Transp. Ltd. v. Spot On Shipping Ltd.</u>, 07 Civ. 4546, 2007 WL 3255823, at *2 (S.D.N.Y. Oct. 30, 2007) (internal quotation marks omitted).

As of early September 2008, D'Amico had ten Panamax vessels in its fleet, five of which had been fully employed for the first quarter of 2009 on long-term charters.  Supplemental Declaration of Luciano Bonaso at ¶ 7, <u>D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.</u>, 09 Civ. 7840 (S.D.N.Y. Oct. 8, 2010) ("Supp. Decl.").  D'Amico had entered into a short-term contract with respect to one of the remaining vessels, which was expected to consume approximately 80 days of vessel employment.  Supp. Decl. at ¶ 7.  In addition, D'Amico had "covered" 90 days of vessel employment through an FFA with another party.  Supp. Decl. at ¶ 7.  Accordingly, as of September 1, 2008, D'Amico's Chief Executive Officer, Luciano Bonaso, calculated that D'Amico

3

needed to fill approximately 280 days of vessel employment for the first quarter of 2009, which he believed was "a bit too high in that market to leave open entirely for spot trading." Supp. Decl. at ¶ 7. Bonaso therefore sought to enter into an FFA to cover another 45 days' employment time. Supp. Decl. at ¶ 7.

On September 2, 2008, the parties entered into an agreement whereby D'Amico agreed to sell, and Primera agreed to buy, an FFA dependent upon the monthly average of the of the Baltic Panamax Index ("BPI") of freight rates published by the Baltic Exchange in London for "4 Panamax TC Routes." Bonaso Decl. Exh. 4 at 1. Bonaso "selected the Panamax index and an average of all four Baltic Exchange time charter routes because this was the physical trade in which [D'Amico] was engaged." Supp. Decl. at ¶ 8.

Under the FFA, whether D'Amico owed money to Primera, or vice versa, would depend on the difference between the "contract rate" of $55,750 per day and the "settlement rate," which was determined by the BPI rate. See Bonaso Decl. Exh. 4. At the end of each month, if the contract rate exceeded the settlement rate, Primera was to pay D'Amico the difference between the prices, multiplied by the number of contract days for each month; if the contract rate was less than the settlement rate, D'Amico was to pay Primera the difference. See Bonaso Decl. Exh. 4.

4

By early 2009, the charter market had declined significantly, and the BPI average for the month of January was only $4,397.5357 per day. As a result, D'Amico invoiced Primera for $795,963.20 on January 30, 2009. Bonaso Decl. Exh. 6 at 1. Primera failed to pay the invoice, and D'Amico brought suit to enforce the parties' agreement in the High Court of Justice, Queen's Bench Division, Commercial Court. Declaration of Linda D. Choo at ¶ 3, D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., No. 09 Civ. 7840 (S.D.N.Y. Nov. 9, 2009) ("Choo Decl."). A judgment was ultimately entered against Primera in the amount of $1,766,278.54 ("the English Judgment"). Affidavit of Lauren C. Davies at ¶ 13, D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., No. 09 Civ. 7840 (S.D.N.Y. Nov. 20, 2009).

## II.

D'Amico brought suit in this Court seeking to enforce the English Judgment. Verified Amended Complaint at *15, D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., 09 Civ. 7840 (S.D.N.Y. Oct. 12, 2010). Primera moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack

subject matter jurisdiction." <u>Lyndonville Sav. Bank & Trust Co. v. Lussier</u>, 211 F.3d 697, 700 (2d Cir. 2000).  There is no allegation of diversity in this case, nor of a treaty providing jurisdiction.  Moreover, the Full Faith and Credit Clause of Article IV § 1 of the United States Constitution does not apply to foreign judgments.  <u>See</u> <u>Aetna Life Ins. Co. v. Tremblay</u>, 223 U.S. 185, 190 (1912); <u>Att'y Gen. of Can. V. R.J. Reynolds Tobacco Holdings, Inc.</u>, 268 F.3d 103, 126 n.29 (2d Cir. 2001).  Federal courts have, however, recognized a "general principle," grounded in concerns of comity, empowering admiralty courts to enforce the decrees of foreign admiralty courts.  This principle was already "settled law and usage" by 1795.  <u>See</u> <u>Penhallow v. Doane</u>, 3 U.S. (3 Dall.) 54, 97 (1795) ("It was clearly shown at the bar, that a Court of Admiralty in one nation, can carry into effect the determination of the Court of Admiralty of another."); <u>see also</u> <u>id.</u> at 118 ("[That] courts of admiralty can carry into execution decrees of foreign admiralties . . . seems to be settled law and usage.").

Thus, federal courts have admiralty jurisdiction to enforce judgments of foreign admiralty courts.  As the Court of Appeals for the Fifth Circuit noted in <u>Int'l Sea Food, Ltd. v. M/V Campeche</u>, 566 F.2d 482 (5th Cir. 1978):

> Similar language in other cases tends to support the existence of a general principle that admiralty courts of this nation are empowered to carry into effect the

6

> maritime decrees of foreign admiralty courts.  In Otis v. The Rio Grande, 18 F.Cas. No. 10,613, pp. 902, 903 (C.C.D. La. 1872), aff'd, 90 U.S. 458, 23 L. Ed. 158 (1887), the court enforced an in rem maritime judgment of another district court which had awarded a sum of money and placed a lien upon the defendant ship with these words: "This court is in duty bound to carry into effect the sentences and decrees, not only of other federal courts, but even of the admiralty courts of other countries. . . ."  See also Pennsylvania Railroad Co. v. Gilhooley, 9 F. 618 (E.D. Pa. 1881). Again, in The Jerusalem, 13 F.Cas. No. 7,293, pp. 559, 563 (C.C.D. Mass. 1814), there is dictum to the effect that an admiralty court "will enforce a foreign maritime judgment between foreigners, where either the property or the person is within its jurisdiction."

Id. at 484.

The question, then, is whether the English judgment was rendered in an exercise of the admiralty jurisdiction of the English court – that is, whether the claim adjudicated was, under English law, maritime in nature.  As the Second Circuit Court of Appeals described in dicta in Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., "an admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim."  825 F.2d 709, 713 (2d Cir. 1987).

Sections 20(1)(a) and 20(2)(h) of the Senior Courts Act of 1981 vest the High Court with admiralty jurisdiction over "any claim arising out of any agreement relating to the carriage of goods in a ship or the use or hire of a ship."  Senior Courts Act, 1981, c. 54 § 20(2)(h).  The House of Lords, interpreting identical language, has held that an agreement "relates to" the

7

carriage of goods in or use of a ship when there is a "reasonably direct connection," and has found that a contract for marine insurance is "not connected . . . in a sufficiently direct sense."  The Sandrina, [1985] A.C. 255 (H.L.) 271 (appeal taken from Scot.); see also Petrofina S.A. v. A.O.T. Ltd. (The Maersk Nimrod), [1992] Q.B. 571, 576 (finding that the phrase "agreement relating to the carriage of goods in a ship" "suggests that the carriage of goods by sea is the central matter to which the agreement relates").[2]  Moreover, the Queen's Bench Division has held that, for a claim to be one "relating to the use or hire of a ship or to the carriage of goods in a ship," the agreement must pertain to an "identifiable," "particular" ship.  The "Lloyd Pacifico", [1995] 1 Lloyd's Rep. 54 [Q.B.] 57.

These cases make clear that the parties' dispute did not concern a claim "arising out of [an] agreement relating to the carriage of goods in a ship or the use or hire of a ship." Senior Courts Act, 1981, c. 54 § 20(2)(h).  If a contract for maritime insurance is not sufficiently related to the carriage of goods or the use of a ship to come within Section 20, it is

---

[2] By contrast, claims arising from similar insurance contracts would be within the admiralty jurisdiction of federal courts in the United States.  See, e.g., Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313 (1955) (finding dispute arising from insurance policy covering vessel to be within federal admiralty jurisdiction).

plain that an FFA would not do so. Moreover, the FFA between the parties related, by its terms, to average BPI rates for four standardized Panamax routes; it did not identify or relate to a particular ship. These cases thus compel the conclusion that, when the English court entered a judgment in favor of D'Amico, it did not do so in an exercise of its admiralty jurisdiction.

Because the English court was not sitting as an admiralty court when it rendered the English Judgment, this Court does not have jurisdiction over an action to enforce that judgment. There being no other basis upon which jurisdiction is asserted, the motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction will be granted.

## CONCLUSION

The defendants' motions to dismiss are **granted**. The Clerk is directed to enter Judgment dismissing the amended complaint without prejudice for lack of jurisdiction, to close all pending motions, and to close this case.

SO ORDERED.

Dated:  New York, New York
        March 26, 2011

_____
John G. Koeltl
United States District Judge