UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————————

D'AMICO DRY LIMITED,

                        Plaintiff,              09 Civ. 7840 (JGK)

       - against -               MEMORANDUM OPINION
                                    AND ORDER

PRIMERA MARITIME (HELLAS) LIMITED,
ET AL.,

                       Defendants.
——————————————————————————————

JOHN G. KOELTL, District Judge:

The plaintiff, D'Amico Dry Limited ("D'Amico") brought this action against Primera Maritime (Hellas) Limited ("Primera") to enforce a money judgment issued by the English High Court of Justice. Primera moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and on March 26, 2011, the Court granted the motion. D'Amico has now filed a motion for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). For the reasons discussed below, the motion is denied.

I.

On October 13, 2010, the Court held an evidentiary hearing to resolve disputed issues of fact relevant to its jurisdiction. See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,

436 F.3d 82, 83-84 (2d Cir. 2006).[1]  After the hearing, the Court found the following facts, none of which is contested:  D'Amico is a charterer of dry bulk cargo vessels in international trade. Most of its vessels are committed to use by its customers on a long-term basis, but D'Amico also employs its vessels on the short-term "spot" market.  In addition, D'Amico sometimes enters into derivative financial contracts called "Forward Freight Agreements" ("FFAs") to hedge its chartering business.  FFAs are agreements "to pay the difference between a price agreed today and the future price of moving a product from one location to another, or for the future price of hiring a ship over a period of time."  Brave Bulk Transp. Ltd. v. Spot On Shipping Ltd., 07 Civ. 4546, 2007 WL 3255823, at *2 (S.D.N.Y. Oct. 30, 2007) (internal quotation marks omitted).

At the beginning of September 2008, D'Amico's fleet was underemployed, and therefore it determined to enter into an FFA to hedge against the risk that it would not be able to employ profitably the remainder of its ships.  On September 2, 2008, D'Amico agreed to sell, and Primera agreed to buy, an FFA dependent upon monthly average freight rates for the routes and types of vessels D'Amico employed.  D'Amico so structured the FFA because it wanted to hedge against fluctuations in the

---

[1] The factual background of this case is set forth in greater detail in the Court's Opinion and Order dated March 26, 2011.

market for the physical trade in which it was engaged.  If the market for chartered vessels declined, Primera would owe money to D'Amico under the FFA; if it improved, D'Amico would owe Primera money.

By early 2009, the charter market had declined precipitously, and D'Amico invoiced Primera for $795,963.20, pursuant to the terms of the FFA, on January 30, 2009.  Primera refused to pay the invoice, and D'Amico brought suit to enforce the parties' agreement in the High Court of Justice, Queen's Bench Division, Commercial Court.  A judgment was ultimately entered against Primera in the amount of $1,766,278.54 ("the English Judgment").

## II.

D'Amico brought suit in this Court seeking to enforce the English Judgment.  Primera moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  On December 20, 2010, the Court granted D'Amico leave to amend the complaint to add a number of additional defendants, and deemed the motion to dismiss as directed against the amended complaint ("the Complaint").  By Opinion and Order dated March 26, 2011 ("the Order"), the Court granted the motion to dismiss, and closed the case.

In ruling on the motion to dismiss, the Court noted that there was no diversity jurisdiction, and no treaty providing jurisdiction over the cause of action; nor did the Full Faith and Credit Clause of Article IV § 1 of the United States Constitution apply, because the judgment to be enforced had been rendered by a foreign court.  See Aetna Life Ins. Co. v. Tremblay, 223 U.S. 185, 190 (1912); Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 126 n.29 (2d Cir. 2001).  The only basis on which jurisdiction was asserted was the "general principle," grounded in concerns of comity and apparently predating the nation's founding, empowering admiralty courts to enforce the decrees of foreign admiralty courts.  See Penhallow v. Doane, 3 U.S. (3 Dall.) 54, 97, 118 (1795); see also Int'l Sea Food, Ltd. v. M/V Campeche, 566 F.2d 482, 484 (5th Cir. 1978).

The Court thus asked whether the English Judgment was rendered in an exercise of the admiralty jurisdiction of the English court – whether the claim adjudicated was, under English law, maritime in nature.  See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987) ("[A]n admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim.").  The Court examined the relevant jurisdictional statutes and case law, and determined that the breach of contract claim brought by D'Amico

was not, under English law, maritime in nature.  As a result,
the Court ruled that the English Judgment had not been rendered
in an exercise of the English court's admiralty jurisdiction,
and could not be enforced pursuant to the "general principle"
articulated by the Supreme Court in Penhallow.  There being no
other basis upon which jurisdiction was asserted, the Court
granted the motion to dismiss for lack of subject matter
jurisdiction under Federal Rule of Civil Procedure 12(b)(1).


### III.


While there are no formal guidelines, courts have
recognized four basic grounds on which a judgment may be altered
or amended pursuant to Rule 59(e): the need to prevent manifest
injustice, the need to correct errors of law or fact, the
availability of new evidence, or an intervening change in
controlling law.  See Virgin Atl. Airways, Ltd. v. Nat'l
Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).
Reconsideration of a court's prior order "is an extraordinary
remedy to be employed sparingly" in the interest of finality.
In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613,
614 (S.D.N.Y. 2000) (citation omitted).  In a motion for
reconsideration, a party may not "advance new facts, issues or
arguments not previously presented to the Court."  Torres v.

Carry, 672 F. Supp. 2d 346, 348 (S.D.N.Y. 2009) (citation omitted).  An identical standard applies to a motion to alter or amend a judgment under Local Civil Rule 6.3.  See In re Evergreen Mut. Funds Fee Litig., 240 F.R.D. 115, 117 (S.D.N.Y. 2007).

"There is a considerable overlap between Rule 59(e) and Rule 60."  11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2817 (2d ed. 1995).  Rule 60(b) sets forth the grounds by which a court, in its discretion, can provide relief from a final judgment or order. See Fed. R. Civ. P. 60(b); Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).  Rule 60(b) allows a court to relieve a party from a final judgment for, among other reasons, "(1) mistake, inadvertence, surprise, or excusable neglect;" "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);" or "(6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  Rule 60(b) exists to strike a balance between "serving the ends of justice and preserving the finality of judgments."  While Rule 60(b) should be read broadly to do "substantial justice," final judgments should not be reopened casually.  Id.  Relief under Rule 60(b) should be granted "only upon a showing of exceptional circumstances."  Id.; see also Minima v. N.Y. City Dep't of Homeless Servs., No. 09 Civ. 1027,

2010 WL 176829, at *1 (S.D.N.Y. Jan. 19, 2010); Meteor AG v. Fed. Express Corp., No. 08 Civ. 3773, 2009 WL 3853802, at *3 (S.D.N.Y. Nov. 18, 2009).

In its motion for reconsideration, D'Amico does not dispute the Court's determination that the English Judgment was not rendered in an exercise of the High Court's admiralty jurisdiction.  Rather, it argues that the Court applied the wrong legal standard in holding that it had subject matter jurisdiction to enforce the English Judgment only if that judgment adjudicated a claim that was within the maritime jurisdiction of the English court.  The plaintiff acknowledges that this was precisely the position it took in its papers in opposition to the motion to dismiss.  However, it now claims that it was mistakenly led to adopt this position based on "misleading dicta" in Victrix, 825 F.2d 709.  Pl's Mem. of L. in Sup. of Mot. for Recons. ("Pl. Mem.") at 3.[2]  Specifically, it claims that Victrix's statement that "an admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim" applies only to in rem claims brought against property, and not to in personam claims brought against defendants.  Pl. Mem. at 3-4.  It further argues that

---

[2] Because the Court finds that full consideration of all of the plaintiff's arguments would not alter the result in this case, there is no need to decide whether the plaintiff's professed failure to construe correctly the case law would constitute "excusable neglect," as the plaintiff claims.  Pl. Mem. at 4.

Hilton v. Guyot, 159 U.S. 113 (1895) provides the correct standard for an in personam suit to enforce a foreign judgment. Pl. Mem. at 5.  Hilton provides generally that a foreign judgment may be recognized and enforced where there has been an opportunity for a full and fair trial abroad before a court of competent jurisdiction.  See id. at 202.

The plaintiff offers no evidence for a jurisdictional distinction between in rem and in personam claims, and the cases it cites indicate that there is none.  As the plaintiff notes, Victrix – which set out the standard applied by the Court in its prior Order – was itself an in personam action.  Victrix, 825 F.2d at 711.  Similarly, in International Sea Food, in which the Court of Appeals for the Fifth Circuit held that federal courts have jurisdiction to enforce the decrees of foreign admiralty courts, the court applied the same standard to in rem and in personam claims, both of which were brought, without distinguishing them in any way.  See Int'l Sea Food, 566 F.2d at 483.

Moreover, the plaintiff's reliance on Hilton is misplaced. Hilton was a diversity case in which there was no dispute as to subject matter jurisdiction.  In that case, the Supreme Court merely recognized the power of the federal courts to enforce foreign judgments on comity grounds in appropriate circumstances.  That power does not create subject matter

jurisdiction, and, like the other powers of the federal courts, cannot be exercised in its absence.  If the plaintiff were correct, federal courts would have jurisdiction to enforce the judgment of a foreign court so long as there had been due process in entering the judgment.  There would be no requirement of independent subject matter jurisdiction in the federal court. D'Amico cites no support for that proposition, and it is not supported by Hilton.

D'Amico argues that the English Judgment should be enforced pursuant to Hilton because this Court has subject matter jurisdiction over its claim under 28 U.S.C. § 1333, which provides for admiralty or maritime jurisdiction in federal courts.  D'Amico argues, in essence, that a district court has admiralty jurisdiction to enforce a foreign judgment where the court would have had admiralty jurisdiction over the subject matter of the foreign dispute.  That is not the case.  An action to enforce a foreign judgment is a separate civil action imposing its own jurisdictional requirements, and a suit to enforce a judgment rendered on a maritime claim is not itself maritime in nature.  See Bergen Indus. & Fishing Corp. v. Joint Stock Holding Co., 2002 AMC 1078, 1079 (W.D. Wa. 2002) (citing Restatement (Third) Foreign Relations § 481 cmt. g, h (1987)). As the court wrote in Bergen:

> Plaintiffs argue that because the underlying facts centered on a charter agreement, the action arises under this Court's admiralty jurisdiction. But this action no longer involves a maritime dispute; the action on the charter contract, unquestionably maritime in character, was litigated in England. The separate question here is whether the English judgment should be enforced. This is a unique civil action untouched by the substantive law leading up to judgment. Admiralty does not supply jurisdiction over this action.

Id. (citations omitted). An action to enforce a foreign court's judgment on a maritime claim is closely analogous to a suit to enforce an agreement to settle such a claim, which courts have repeatedly held to be outside the admiralty jurisdiction of the federal courts. See Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc., 413 F.3d 307, 322-23 (2d Cir. 2005) (collecting cases); Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir. 1991) (agreement to contribute to settlement of charter claim not a maritime contract); Pac. Surety Co. v. Leatham & Smith Towing & Wrecking Co., 151 F. 440, 443 (7th Cir. 1907) (action upon covenant to pay damages for breach of charter party not within admiralty jurisdiction, cited in Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961)).[3]

_____

[3] The only case to the contrary cited by the plaintiff is Flame S.A. v. Primera Mar. (Hellas) Ltd., No. 09 Civ. 8138, 2010 WL 481075 (S.D.N.Y. Feb. 2, 2010), in which the district court asserted subject matter jurisdiction over a suit to enforce an English judgment on a claim for breach of an FFA. Id. at *2. The plaintiff is correct that Flame "is on all fours." Pl. Mem. at 7. However, the court in Flame did not distinguish between an action for breach of an FFA and an action to enforce a

The Court thus does not have subject matter jurisdiction to enforce the English Judgment pursuant to 28 U.S.C. § 1333. As the Court rejected, in its prior Order, the only other basis upon which jurisdiction was asserted, and the plaintiff does not challenge the correctness of that decision, the motion for reconsideration is denied.

## CONCLUSION

The plaintiff's motion under Federal Rules of Civil Procedure 60(b) and 59(e) is **denied**. The Clerk is directed to close **Docket No. 117**.

SO ORDERED.

Dated:      New York, New York
            July 28, 2011

                                      John G. Koeltl
                              United States District Judge

---

foreign court judgment in such an action; it assumed that if the court would have had jurisdiction over the substance of the underlying dispute, it also had jurisdiction over a suit to enforce the judgment. For the reasons explained above, this assumption is incorrect.

11