UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
D'AMICO DRY LIMITED,                             :
                                                 :
                          Plaintiff-Appellants,  :        09 CIV 7840  (JGK)
                                                 :
            v.                                   :
                                                 :
PRIMERA MARITIME (Hellas)                        :
LIMITED, ET AL.                                  :
                                                 :
                          Defendant-Appellees. :
-----------------------------------------------------------------x


# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 1

    A.   Procedural History ................................................................................... 1

    B.   Relevant Factual Background on the Nature of FFAs .......................................... 2

III.    ARGUMENT ....................................................................................................... 4

    A.   Standard of Review ................................................................................... 4

    B.   The Primera FFA, and FFAs Generally, Are Not Maritime Contracts ................ 4

        1.   Admiralty Jurisdiction Extends Only To Contracts That Have The Objective Of Maritime Commerce .......................................................... 5

        2.   FFAs Do Not Have the Primary Objective of Furthering Maritime Commerce ................................................................................................ 6

        3.   A Ruling that FFAs Are Maritime Contracts Would Have Implications Far Beyond the Venue for Disputes Arising Under Such Contracts ........................................................................................ 12

        4.   Even Assuming FFAs Could Be Regarded as Maritime Contracts, d'Amico's Purported Undisclosed Use of this FFA to Offset Its Unemployed Ship Expenses Should Not Govern the Analysis ............... 12

            a.   The d'Amico/Primera FFA Documents Do Not Indicate Use As a Hedge Against Either Party's Business Losses ............ 13

            b.   d'Amico's Explanation for How the Primera FFA Applied to Its Maritime Business is Inconsistent and Not Credible .......... 14

    CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aggelikos Prostatis Corp. v. Shun Da Shipping Grp. Ltd.*,
  646 F. Supp. 2d. 330 (S.D.N.Y. 2009).........................................................................9

*Alphamate Commodity GMBH v. CHS Europe SA*,
  627 F.3d 183 (5th Cir. 2010) .................................................................................4, 6

*Aston Agro-Indus. AG v. Star Grain Ltd.*,
  06 Cv 2805, 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006)....................9

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir. 2005)......................................................................................4

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
  08 Civ 4554, U.S. Dist. LEXIS 11254 (S.D.N.Y. Feb. 9, 2010) ............................11

*Brave Bulk Transp. v. Spot on Shipping, Ltd.*,
  07-Civ-4546, 2007 U.S. Dist. LEXIS 69751
  (S.D.N.Y. Sept. 14, 2007)........................................................................................11

*Bulk Trading S.A. v. Capex Eur. S.A.M.*,
  No. 10-297, 2011 Dist. LEXIS 35059 (E.D. La. March 22, 2011).........................11

*Carter-Green-Redd, Inc. v. USS Cabot/Dedalo Museum Found.*,
  756 F. Supp. 276 (E.D. La. 1991)...........................................................................10

*Clem Perrin Martine Towing, Inc. v. Panama Canal Co.*,
  730 F.2d 186 ..............................................................................................................9

*Colonna's Shipyard, Inc. v. U.S.A.F. Gen. Hoyt S. Vandenberg*,
  584 F. Supp. 2d 862 (E.D. Va. 2008) .......................................................................9

*CTI-Container Leasing Corp. v. Oceanic Operations Corp.*,
  682 F.2d 377, 380 n.4 ...............................................................................................8

*d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*,
  756 F.3d 151 (2d Cir. 2014).......................................................................................2

*d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 09 Civ 7840,
  2011 U.S. Dist. LEXIS 31986, *10 (S.D.N.Y. Mar. 26, 2011) ...............................7

*De Silvio v. Prudential Lines, Inc.*,
  701 F.2d 13 (2d Cir. 1983)......................................................................................12

*EFKO Food Ingredients Ltd. v. Pac. Inter-Link SDN BHD*,
    582 F. Supp. 2d 466 (S.D.N.Y. 2008).................................................................................6, 9

*Exxon Corp. v. Cent. Gulf Lines, Inc.*,
    500 U.S. 603, 608 (1991)...........................................................................................................5

*Farenco Shipping Co. Ltd. v. Farenco Shipping Pte Ltd.*,
    No. 12-2544, 2012 U.S. Dist. LEXIS 163469 (E.D. La. Nov. 15, 2012) .......................6, 7, 11

*Flame S.A. v. Freight Bulk Pte. Ltd.*,
    762 F.3d 352 (4th Cir. 2014) ...................................................................................................12

*Folksamerica Reins. Co. v. Clean Water of N.Y., Inc.*,
    413 F.3d 307, 311 (2d Cir. 2005)...............................................................................................6

*French Republic v. Fahey*,
    278 F. 947, 949 (D. Md. 1922) ..................................................................................................9

*Great E. Shipping Co. v. Maritime Tankers & Shipping Co. Int'l Ltd.*,
    631 F. Supp. 2d 392 (S.D.N.Y. 2009).......................................................................................9

*Hatteras of Lauderdale, Inc. v. Gemini Lady*,
    853 F. 2d 848 (11th Cir 1988) ..................................................................................................9

*In re Interbulk, Ltd.*,
    240 B.R. 195 (Bankr. S.D.N.Y. 1999).......................................................................................7

*Lucky-Goldstar, Int'l (Am.) Inc. v. Phibro Energy Intl, Ltd.*,
    958 F.2d 58 (5th Cir. 1992) .......................................................................................................9

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000).......................................................................................................4

*Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA*,
    78 F. Supp. 2d 162, 169 (S.D.N.Y. 1999) ...............................................................................10

*MLC Fishing, Inc. v. Velez*,
    667 F.3d 140 (2d Cir. 2011).......................................................................................................4

*Nehring v. S.S. M/V Point Vail*,
    901 F.2d 1044 (11th Cir. 1990) .............................................................................................4, 5

*Noble Res. PTE. Ltd. v. Metinvest Holding Ltd.*,
    622 F. Supp. 2d 77 (S.D.N.Y. 2009).....................................................................................9, 10

*Norfolk S. Ry. v. Kirby*,
    543 U.S. 14 (2004)..........................................................................................................4, 5, 6, 7

*N. Pac S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*,
  249 U.S. 119, 125 (1919).......................................................................................................5

*Penguin Mar. Ltd. v. Lee & Muirhead Ltd.*,
  588 F. Supp. 2d 522 (S.D.N.Y. 2008)...............................................................................10

*People's Ferry Co. v. Beers*,
  61 U.S. 393 (1857)...............................................................................................................9

*Pioneer Freight Futures Co. v. Marine Trade S.A.*
  Cv. 11-10313, 2011 U.S. Dist. LEXIS 157971,
  (C.D. Cal. Dec. 20, 2011) ....................................................................................................7

*Polestar Mar. Ltd. v. Nanjing Ocean Shipping Co.*,
  631 F. Supp. 2d 304 (S.D.N.Y. 2009).................................................................................8

*Primera Maritime Ltd. v. Jiangsu E. Heavy Indus. Co.*,
  355 Fed. App'x 477 (2d Cir. 2009) .....................................................................................9

*Shanghai Sinom Import & Export v. Exfin (India) Mineral Ore Co.*,
  06 Civ. 4711, 2006 U.S. Dist. LEXIS 97863 (S.D.N.Y. Oct 6, 2006) ......................................9

*Shipping Financial Services Corp. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998).................................................................................................9

*Silver v. Sloop Silver Cloud*,
  259 F. Supp. 187 (S.D.N.Y. 1966) ....................................................................................10

*Thames Towboat Co. v. Francis McDonald*,
  254 U.S. 242 (1920)..........................................................................................................5, 9

*The Ada*,
  250 F. 194, 195-196 (2d Cir. 1918) .....................................................................................8

*Transfield ER Futures Limited v The Ship 'Giovanna Iuliano'*,
  [2012] FCA 548 (Fed. Court Aus.).......................................................................................8

*Transfield Er Futures Ltd. v. Deiulemar Shipping S.P.A.*,
  No. 11-099c, 2012 U.S. Dist. LEXIS 5040 (E.D. LA. January 17, 2012)..............................11

*Vrita Marine Co. v. Seagulf Trading LLC*,
  572 F. Supp. 2d 411 (S.D.N.Y. 2008).................................................................................9

*Williamson v. Recovery L.P.*,
  542 F.3d 43 (2d Cir. 2008).................................................................................................12

**FEDERAL RULES**

Fed. R. Civ. P. Suppl. Rules for Admiralty or Maritime Claims
and Asset Forfeiture Actions, Rule B ......................................................................12

**TREATISES**

1 Benedict on Admiralty § 182 (2010) ......................................................................5

Restatement (Second) of Contracts, § 20......................................................................14

**ARTICLES**

Timothy E. Lynch, *Derivatives: A Twenty-First Century Understanding*
43 Loyola U. Chi. L.J. 1......................................................................2

Nick J. Shaw & Sarah Choudhry, *Can a Vessel Be Arrested for a Forward Freight
Agreement Claim in China?* at
http://www.lexology.com/library/detail.aspx?g=ccc2e208-ab24-4c66-bad6-
e8191c4b8573 (Dec. 16 2010)......................................................................8

## I.     INTRODUCTION

This case is an enforcement action that turns primarily on the question of whether Plaintiff d'Amico Dry Limited ("d'Amico") can properly collect on a judgment obtained in Great Britain, here in the United States under federal maritime jurisdiction.  Defendant Primera Maritime (Hellas) Limited ("Primera") maintains that the underlying claim is not a maritime claim and thus there is no federal maritime jurisdiction.

## II.    STATEMENT OF FACTS

### A.     <u>Procedural History</u>

d'Amico filed suit in this Court under this Court's admiralty jurisdiction [Dkt No. 1] to enforce an English court's judgment on a forward freight agreement ("FFA") between d'Amico and Primera.  Primera moved to dismiss this action for lack of subject matter jurisdiction. Primera's motion was dismissed without prejudice after the Court decided that an evidentiary hearing would be necessary to determine jurisdiction.  [Doc. No. 23].  On December, 23, 2010, after Primera's liquidation proceedings commenced, d'Amico amended its complaint to add over a dozen additional companies as named defendants and alleged alter-egos of Primera. [Doc. No. 64].  These defendants also moved to dismiss for lack of subject matter jurisdiction. [Doc. Nos. 99, 102, 107]

In 2011, this Court, upon evidentiary submissions by the parties, dismissed d'Amico's enforcement action for lack of subject matter jurisdiction and denied d'Amico's motion for reconsideration.  [Dkt Nos. 115, 124].  The Court based its rulings on: 1) a finding that the English court in this case "was not sitting as an admiralty court when it rendered the English judgment," therefore, this Court does not have jurisdiction to enforce that judgment [Dkt No. 115 at 9] and; 2) upon d'Amico's motion for reconsideration, that an enforcement action requires an

independent basis for admiralty jurisdiction separate from a federal court's admiralty jurisdiction over the underlying dispute.  *Id.*  The Second Circuit disagreed with this Court's reasoning and reversed dismissal.  *See d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 756 F.3d 151, 158-162 (2d Cir. 2014).  Leaving it to this Court to determine the ultimate question as to whether the underlying claim of breach of the FFA agreements should be deemed a maritime claim, the Second Circuit held that this determination must be made under U.S. law.  *See id.* at 162.

### B.      Relevant Factual Background on the Nature of FFAs

FFAs are a form of derivative "in which the net payoffs of the counterparties are a function of future shipping rates and/or freight shipping costs indexes."  Timothy E. Lynch, *Derivatives: A Twenty-First Century Understanding*, 43 Loyola U. Chi. L.J. 1, 24 n.86.  FFAs are paper swaps containing a fixed rate (contract price), quantity (days or tonnes) and period (month, quarter or calendar year) based on a specific route or a basket of routes of a designated index in the future, and can be bought or sold and are settled against the specified index published by the Baltic Exchange on a daily basis.  Declaration of Karina Albers ("Albers Decl.") at ¶ 8.  They are Contracts for Differences (CFD), i.e. cash settled.  *Id.* at ¶ 7.  The contracting parties agree on a certain route or basket of routes (e.g. average of the four time charter routes) at a certain price for a FFA with a fixed expiration date in the future.  Once the expiration date is reached, if the settlement price is above the contract price of the FFA, the seller compensates the buyer, paying the difference between the contract price and the settlement price; if the settlement price is lower than the contract price the buyer pays the difference to the seller. *Id.* at ¶8.  The standard settlement price is the mean of the daily Baltic Exchange spot price assessments for every trading day in the contracting month.  *Id.*  The assessments derive from an average of the daily collective assessments of physical freight fixtures and freight indications

made by brokers that sit on a panel for the Baltic Exchange.  *Id.*; *see also id.,* Exhibit B, Ernst Russ, Forward Freight Agreement Guide at p. 5.

FFAs are financial instruments to trade the volatility of the freight market; they are used to hedge, speculate, arbitrate or re-distribute market risk.  Albers Decl. at ¶ 22.  Ship owners and charterers have used these financial instruments to speculate on the market, as well as to hedge. *See id.* at ¶13.  17.     An FFA does not involve parties to a charter party; nor is an FFA part of a transaction involving any identifiable charter party, vessel, cargo or voyage.  *Id.* at ¶ 17.  An FFA does not involve any particular voyage, the use or hire of any particular vessel, or any particular contract of carriage.    *Id.*    A FFA trade does not involve any maritime activity such as the provision of a ship or cargo to perform shipping services at a future date; nor does it require physical performance of any kind.  *See id.* at ¶17, 22.  In fact, using derivatives relegates the need to supply a ship or cargo.  *Id.* at ¶ 10.   The FFA market is not correlated to the dry bulk cargo physical market, as its volume in most years has either exceeded or been significantly less than physical cargo moved in a given year.  *See id.* at 11.  The underlying purpose of a FFA is simply to obtain financial gain or loss based upon independent market factors outside of the parties' control.  *See id.* at 17.

The specific FFA in this case ("d'Amico/Primera FFA") is a contract for January, February, and March, 2009 to speculate on freight rates for the BPI Average Panamax TC Routes for the average of 45 days, calling for cash settlement at the end of each contractual month.  *See* d'Amico/Primera FFA [Doc. No. 14-2 at 12].  Through their FFA agreement, d'Amico and FFA were able to speculate about future market rates for shipping by making opposite bets about whether those rates will be higher or lower than the rate identified in the FFA.  To determine the prevailing bettor, the FFA between d'Amico and Primera required a

straightforward financial calculation of the difference between the "contract rate" of $55,750 and

the "settlement rate", as determined by the Baltic Panamax Index rate. *See id.* at 12, 15. The

FFA specified that it would be governed by English law. *See id.* at 12, 17. The FFA called for

settlement by cash, without any subsequent physical obligation. *Id.* at 12, see also Albers Decl.

at ¶17. The settlement rate is based on the collective assessment of brokers of freight values that

would apply to a theoretical ship carrying a theoretical amount of a certain type of cargo over a

particular route. *See* Albers Decl. at ¶8.

### III.    ARGUMENT

#### A.    Standard of Review

Plaintiffs bear the burden of demonstrating that subject matter jurisdiction exists. *MLC

Fishing, Inc. v. Velez*, 667 F.3d 140, 141 (2d Cir. 2011). On a motion to dismiss for lack of

subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving subject

matter jurisdiction by a preponderance of the evidence. *See Aurecchione v. Schoolman Transp.

Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In resolving a motion to dismiss for lack of subject

matter jurisdiction, the Court may refer to evidence outside the pleadings. *See Makarova v.

United States*, 201 F.3d 110, 113 (2d Cir. 2000).

#### B.    The Primera FFA, and FFAs Generally, Are Not Maritime Contracts

It is undisputed that "[n]ot every contract that somehow relates to a ship or its business is

considered maritime." *Nehring v. S.S. M/V Point Vail*, 901 F.2d 1044, 1048 (11th Cir. 1990). A

maritime contract must have the furtherance of maritime commerce as their "principal

objective." *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 25 (2004). In the instant case, Primera submits

that the District Court should follow the longstanding maritime principle requiring that a contract

is maritime only if there is a "'direct and substantial link between the contract and the operation

of the ship, its navigation, or its management afloat." *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 187 (5th Cir. 2010) (quoting 1 Benedict on Admiralty § 182 (2010) (emphases omitted). FFAs fall far short of that standard: they are derivatives tied to an Exchange index and do not relate to the terms of any particular nautical transportation of goods and, indeed, have no direct connection to any particular vessel. Therefore, under U.S. law, FFAs could not be considered maritime contracts. However, even if the Court finds that, in some circumstances, FFAs could potentially be maritime contracts, d'Amico has failed to establish that those circumstances exist here. As such, the Court, respectfully, must regard the principal objective of the d'Amico/Primera FFA as consistent with its plain and apparent purpose – as a means of speculating on the average shipping index rates on a particular exchange for an agreed to period of time.

### 1.    Admiralty Jurisdiction Extends Only To Contracts That Have The Objective Of Maritime Commerce.

Federal admiralty jurisdiction covers contractual disputes only if the contract at issue "is a maritime one." *Kirby*, 543 U.S. at 22-23. Whether a contract is maritime "depends upon . . . the nature and character of the contract and the true criterion is whether it has reference to maritime service or maritime transactions." *Id.* At 24 (quoting *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co*., 249 U.S. 119, 125 (1919)). Specifically, because "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce, a contract is maritime if, and only if, the "principal objective of a contract is maritime commerce." *Id.* at 25 (quoting *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 608 (1991)) (emphasis in *Kirby*). Therefore, "[n]ot every contract that somehow relates to a ship or its business is considered maritime." *Nehring*, 901 F.2d at 1048; *see also, e.g., Thames Towboat Co. v. Francis McDonald*, 254 U.S. 242, 244-45 (1920) (ruling that a dispute arising from a

shipbuilding contract does not fall within U.S. admiralty jurisdiction).  In *Kirby*, the Supreme Court ruled that the bills of lading at issue were maritime contracts because "their primary objective [was] to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States."  *Kirby*, 543 U.S. at 24.

Rather, because maritime contracts must have the furtherance of maritime commerce as their "*principal objective*", *Kirby*, 543 U.S. at 24 (emphasis added), a contract is maritime only if there is "a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat'", *Alphamate Commodity GMBH*, 627 F.3d at 187. "Contracts that are 'mixed' - that contain maritime and non-maritime elements - generally fall outside of admiralty jurisdiction, "unless" the claim arises from a breach of a maritime obligation that is severable from the non-maritime obligations of the contract or "the non-maritime elements are merely incidental." *EFKO Food Ingredients Ltd. u. Pac. Inter-Link SDN BHD*, 582 F. Supp. 2d 466, 470 (S.D.N.Y. 2008) (citing *Folksamerica Reins. Co. v. Clean Water of N.Y., Inc.,* 413 F.3d 307, 311 (2d Cir. 2005)).  Accordingly, as a leading treatise observes, "[a]dmiralty does not recognize contracts that . . . are not actually concerned with the business of running or navigating a boat."  1 Benedict on Admiralty § 183 (7th ed. 2010).

## 2.    FFAs Do Not Have the Primary Objective of Furthering Maritime Commerce.

FFAs do not have maritime commerce as their principal objective.   They are derivatives that parties use to bet on the future direction of shipping rates associated with certain trade routes.  *See Farenco Shipping Co. Ltd. v. Farenco Shipping Pte Ltd.*, No. 12-2544, 2012 U.S. Dist. LEXIS 163469, *5 (E.D. La. Nov. 15, 2012).  The connection to the conduct of maritime commerce is tangential; the price fluctuations of any asset or index can be the subject of this kind

of speculation. *See In re Interbulk, Ltd.*, 240 B.R. 195, 201 (Bankr. S.D.N.Y. 1999) (adopting the definition of FFAs as "swaps"  "whereby cash payments are exchanged periodically (or a lump sum at termination) between the parties based upon changes in the price of the underlying asset or index as determined by an agreed-upon benchmark."). Parties to FFAs need not be involved in maritime shipping at all. There can be no "direct and substantial link" between an FFA and maritime commerce or any particular ship or cargo, given that FFAs are tied to an index for trade route charter prices based on hypothetical ship voyages along that route. This lack of connection to a "maritime service or maritime transaction[]" sharply distinguishes FFAs from contracts, such as the bill of lading at issue in Kirby, that directly govern "the transportation of goods" by sea. *Kirby*, 543 U.S. at 18, 24.

Substantial authority weighs against treating FFAs as maritime contracts. Three district courts have, in fact, indicated that FFAs are not maritime in nature. The court in *Farenco* stated, albeit in dicta, that FFAs are not "maritime contracts" because they "do not directly involve maritime commerce or an actual commitment to move cargo." 2012 U.S. Dist. LEXIS 163469, at *5. This Court, in the instant case and another district court have held that FFAs are not maritime contracts as a matter of English law for reasons that would compel the same conclusion under federal law. This Court determined that, under English law that an action for breach of an FFA did not invoke the "admiralty jurisdiction" of English courts because it "did not concern a claim 'arising out of [an] agreement relating to the carriage of goods in a ship or the use or hire of a ship.'" *d'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, 09 Civ 7840, 2011 U.S. Dist. LEXIS 31986, *10 (S.D.N.Y. Mar. 26, 2011) (internal citations omitted); *accord Pioneer Freight Futures Co. v. Marine Trade S.A.*, Cv. 11-10313, 2011 U.S. Dist. LEXIS 157971, at *8 (C.D. Cal. Dec. 20, 2011) (recognizing "FFAs are commodity contracts, not maritime contracts,"

-7-

and "[t]here is no relationship whatsoever between an FFA and an agreement which would relate to the carriage of goods in a ship or the use or hire of a ship.")

Other jurisdictions that have considered this issue have held that FFAs are not maritime contracts.[1]  *See, e.g., Transfield ER Futures Limited v The Ship 'Giovanna Iuliano'*, [2012] FCA 548 at ¶¶ 21-37 (Fed. Court Aus.)   A similar ruling has also been reported from China's Shanghai Maritime Court.[2]  The Federal Court of Australia held in *Transfield ER Futures Ltd* that ships cannot be arrested on the basis of claims relating to Forward Freight Agreements (FFAs) because "FFAs are commonly described as "derivatives". They are derivatives because no party buys or sells any goods. There is no chartering of any ship. There is no carrying of goods whether by ship or otherwise." *Transfield ER Futures Ltd*, [2012] FCA 548 at ¶ 24.

The conclusion that FFAs are not maritime commerce is further reinforced by decisions holding that various other types of contracts are not maritime even though the contracts have some connection to vessels or maritime cargo.  For example, the prevailing rule is that a contract for the sale of a ship is not a maritime contract.  *See The Ada,* 250 F. 194, 195-196 (2d Cir. 1918)*; Polestar Mar. Ltd. V. Nanjing Ocean Shipping Co.,* 631 F. Supp. 2d 304, 305 (S.D.N.Y. 2009) (citing *CTI-Container Leasing Corp. v. Oceanic Operations Corp.,* 682 F.2d 377, 380 n.4

---

[1] A ruling that FFAs are maritime in nature therefore would place the United States at odds with its major trading partners.

[2] Nick J. Shaw and Sarah Choudhry, *Can a vessel be arrested for a forward freight agreement claim in China?* at  http://www.lexology.com/library/detail.aspx?g=ccc2e208-ab24-4c66-bad6-e8191c4b8573 (Dec. 16 2010).

(2d Cir. 1982)).[3]   Moreover, it has been settled for a century and a half that contracts for the construction of ships are similarly non-maritime.[4]   Contracts for the goods that vessels transport also do not constitute maritime contracts—even where the contract specifies that goods must be transported by sea.[5]   Failure to take delivery of a vessel is similarly "not a maritime obligation and it does not implicate concerns of maritime commerce." *Vrita Marine Co. v. Seagulf Trading LLC*, 572 F. Supp. 2d 411, 412 (S.D.N.Y. 2008).   In addition, claims arising from brokerage contracts are also excluded from the realm of maritime claims.  *See  Shipping Financial Services*

---

[3] *See also, e.g., Clem Perrin Martine Towing, Inc. v. Panama Canal Co.,* 730 F.2d 186, 188 (5th Cir. 1984*; Great E. Shipping Co. v. Maritime Tankers & Shipping Co. Int'l Ltd.,* 631 F. Supp. 2d 392, 395 (S.D.N.Y. 2009)*; Aggelikos Prostatis Corp. v. Shun Da Shipping Grp. Ltd.*, 646 F. Supp. 2d. 330, 332 (S.D.N.Y. 2009).*

[4] *See, e.g., People's Ferry Co. v. Beers*, 61 U.S. 393, 402 (1857); *accord, e.g., Thames Towboat Co.*, 254 U.S. at 244; *Primera Maritime Ltd. v. Jiangsu E. Heavy Indus. Co.*, 355 Fed. App'x 477, 478 (2d Cir. 2009); *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F. 2d 848, 849 (11th Cir 1988); *Colonna's Shipyard, Inc. v. U.S.A.F. Gen. Hoyt S. Vandenberg*, 584 F. Supp. 2d 862, 866 (E.D. Va. 2008).

[5] *See, e.g., Lucky-Goldstar, Int'l (Am.) Inc. v. Phibro Energy Intl, Ltd.*, 958 F.2d 58, 59 (5th Cir. 1992); *Noble Res. PTE. Ltd. v. Metinvest Holding Ltd.*, 622 F. Supp. 2d 77, 85 (S.D.N.Y. 2009) (collecting cases); *EFKO Food Ingredients Ltd.*, 582 F. Supp. 2d at 470-71; *Aston Agro-Indus. AG v. Star Grain Ltd.*, 06 Cv 2805, 2006 U.S. Dist. LEXIS 91636, *9-10 (S.D.N.Y. Dec. 20, 2006); *Shanghai Sinom Import & Export v. Exfin (India) Mineral Ore Co.,* 06 Civ. 4711, 2006 U.S. Dist. LEXIS 97863, *1 (S.D.N.Y. Oct 6, 2006); *French Republic v. Fahey*, 278 F. 947, 949 (D. Md. 1922).

*Corp. v. Drakos*, 140 F.3d 129, 133-34 (2d Cir. 1998) (ruling that a contract under which plaintiff was to act as a broker and procure a subcharter for defendant was not a maritime contract but was preliminary to maritime commerce.); *Penguin Mar. Ltd. v. Lee & Muirhead Ltd.*, 588 F. Supp. 2d 522, 525 (S.D.N.Y. 2008) (ruling that agency contract was not maritime in nature).

Even agreements to secure contracts for the future use of maritime vessels or equipment are not considered maritime in nature. *See Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA*, 78 F. Supp. 2d 162, 169 (S.D.N.Y. 1999) (ruling that the "MOA is not a contract to provide offshore drilling rigs. It is an agreement to procure contracts for the future use of defendants' rigs and, therefore, not maritime in nature"); *Carter-Green-Redd, Inc. v. USS Cabot/Dedalo Museum Found.,* 756 F. Supp. 276, 278 (E.D. La. 1991) ("An agreement which merely sets the stage and conditions for the possible opening of land-based negotiations is far too remote from navigation or maritime commerce to be labelled as a maritime contract.").

Given that none of these contracts constitute maritime contracts under U.S. law, even though they bear some relationship to an actual vessel or shipment, it follows a *fortiori* that FFAs – which lack *any* concrete connection to maritime commerce – also cannot be seen as maritime. The rational for classifying these contracts as non-maritime contracts similarly applies to FFAs – that they do not "relate[] directly to the operation of a vessel or its navigation, *Noble Res. Pte. Ltd.,* 622 F. Supp. 2d at 85; that they do not "concern transportation by sea, relate[] to navigation or maritime employment, or involve[] navigation and commerce on navigable waters"   *Silver v. Sloop Silver Cloud*, 259 F. Supp. 187, 190 (S.D.N.Y. 1966). Moreover, the exclusion of future-use contracts for vessels as maritime contracts are particular relevant here, where FFAs are entirely related to predictions of future freight rates.

-10-

In an unpublished opinion, a division of this Court held that FFAs are maritime contracts based on inaccurate information describing FFAs as "commitments to perform in the future a shipping service between ship owners, charterers and/or traders." *Brave Bulk Transp. v. Spot on Shipping, Ltd*, 07-Civ-4546, 2007 U.S. Dist. LEXIS 69751, at *4 (S.D.N.Y. Sept. 14, 2007).   A number of courts subsequently relied on this definition in *Brave Bulk* in finding FFAs to be maritime. *See Transfield Er Futures Ltd. v. Deiulemar Shipping S.P.A.*, No. 11-099c, 2012 U.S. Dist. LEXIS 5040, *7 (E.D. LA. January 17, 2012)  (determining that  "the very essence of these FAAs[sic] concerns commitments to perform shipping services in the future"); *Bulk Trading S.A. v. Capex Eur. S.A.M.*, No. 10-297, 2011 Dist. LEXIS 35059, *5 (E.D. La. March 22, 2011) ("Forward freight agreements are commitments to perform shipping services in the future").

FFAs are financial instruments that do not involve "an actual commitment to move cargo." *Farenco*, 2012 U.S. Dist. Lexis 163469, at *5.  The fact that entities that are engaged in maritime commerce may use the FFA "to hedge against" changes in "charter rates" that might detrimentally impact the company's bottom line, *see In re Britannia Bulk Holdings Inc. Sec. Litig.,* 08 Civ 4554, U.S. Dist. LEXIS 11254, at *5 n.4 (S.D.N.Y. Feb. 9, 2010) (discussing a report to the SEC), does not render them maritime contracts.  A bet on the future direction of the shipping market does not have an impact maritime commerce.  While changes in the shipping market directly influence the performance and outcome of FFAs, the reverse is not true.  FFAs do not have a primary objective of furthering maritime commerce and cannot be regarded as maritime contracts.  *Id.*

     **3.**     **A Ruling that FFAs Are Maritime Contracts Would Have Implications Far Beyond the Venue for Disputes Arising Under Such Contracts.**

Requiring that FFAs be regarded as maritime contract, will directly affect substantive rights and remedies of the parties to such contracts.  For example, the protection and benefits of the doctrine of statute of limitations would no longer be available to either party.  It would be replaced by the far more elastic doctrine of laches.  *See e.g.*, *De Silvio v. Prudential Lines, Inc.*, 701 F.2d 13, 15 (2d Cir. 1983).  In addition parties could be subjected to prejudgment attachments based on concepts foreign to most civil jurisdictions in the United States.  *See* Fed. R. Civ. P., Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule B.  There would be no requirement for the attaching party to post a bond or to demonstrate that it would suffer irreparable harm without the attachment.  *See id.*  The maritime attachment is basically ex parte and not subject to a pre-attachment notice requirement common in civil litigation.  *See id.*; *Williamson v. Recovery L.P.*, 542 F.3d 43, 48 (2d Cir. 2008).  Maritime contracts can create maritime liens unknown in civil litigation.  In short, a holding that FFAs are maritime contracts would subject a typical financial investor to legal concepts alien to financial markets in the United States and around the world.

     **4.**     **Even Assuming FFAs Could Be Regarded as Maritime Contracts, d'Amico's Purported Undisclosed Use of this FFA to Offset Its Unemployed Ship Expenses Should Not Govern the Analysis**

The Fourth Circuit's recent ruling involving a FFA contract dispute, in *Flame v. Freight Bulk*, declined to follow the well-established line of reasoning requiring a connection between a contract and the operation or navigation of a vessel.  *See Flame S.A. v. Freight Bulk Pte. Ltd.*, 762, F.3d 352, 362 (4th Cir. 2014).  The Fourth Circuit did not resolve "the global issue of whether all FFAs are maritime contracts," affirming only the District's Court's finding that under

-12-

the circumstances of that case, the FFA was a maritime contract.  *Id.* (ruling that the District Court was not clearly erroneous in finding that "both Flame and ICI are shipping companies principally engaged in maritime commerce" and that neither "create[d] the FFAs as mere financial speculators, but as a component of their shipping businesses.").  In this instance, even if the Court were to adopt the Fourth Circuit's line of analysis, the circumstances of this case do not warrant such a finding.

> **a.    The d'Amico/Primera FFA Documents Do Not Indicate Use As a Hedge Against Either Party's Business Losses**

It is undisputed that the d'Amico/Primera FFA does not, on its face, operate as a hedge against either's party's shipping losses; it reads as a straightforward agreement for financial speculation on shipping rates.  There is no evidence in the record to indicate that Primera was hedging.  In fact there is no evidence that Primera owned or chartered any Panamax vessels during the relevant period.  D'Amico, according to its 2009 Annual Report, used FFAs "to reduce the market risk associated with 'physical' freight rate movements, by using FFAs (paper market) to offset, insofar as possible, unexpected fluctuations."  Albers Decl, Ex. C, d'Amico 2009 Annual Report at 41.   d'Amico's FFAs, in their own words, are used to hedge against freight rates and not against its physical trade.  *See* Albers Decl. at 19.  Hedging against freight rates is akin to hedges against interest rates, foreign currency – all hedges that d'Amico engaged in, in 2009, *see* d'Amico 2009 Annual Report at 41; none of which could be described as maritime contracts.  For example, according to d'Amico's annual report, in 2009 and beyond, d'Amico used foreign exchange swaps to hedge potential exposure to fluctuations in the Japanese yen because "various vessel purchase operations will have to be settled in Japanese yen."  d'Amico Annual Report at 41.  The relationship between these hedges and d'Amico's shipping business does not transform foreign exchange swaps into maritime contracts.

Moreover, there is also no evidence in the record that d'Amico's supposed purpose in entering into the FFAs as more than a speculative instrument, was conveyed to Primera.  Yet, d'Amico contends that its purported undisclosed hedge against its physical trade regarding this FFA should determine how this FFA should be characterized by the Court.  Giving prominence to this undisclosed objective is also inconsistent with general principles of contract law, which require mutual assent.  The Restatement (Second) of Contracts indicates that: "There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and neither party knows or has reason to know the meaning attached by the other."  Restatement (Second) of Contracts, § 20.  Therefore, it stands to reason that d'Amico purported hidden objective regarding this FFA should not govern how this FFA is characterized.

### b.    d'Amico's Explanation for How the Primera FFA Applied to Its Maritime Business is Inconsistent and Not Credible

Even if consideration of d'Amico's undisclosed intent is found warranted by the Court, the record suggests that d'Amico's proffered explanation – using FFAs as a hedge against its physical trade – should be given little weight.  According to the Chief Executive Officer of d'Amico, Luciano Bonaso, d'Amico's intent in entering this FFA was to guarantee a set income for the Panamax vessels for a certain number of days.  Deposition of Luciano Bonaso ("Bonaso Dep.") at 52: 5-10.  Yet Mr. Bonaso gave conflicting statements as to the number of days of income that could be derived from the Primera FFA.  In a declaration, Mr. Bonaso stated that he "entered into the Primera FFA to add another 90 days employment to our fleet employment

calculators,"[6] which reduced the unemployed days to about 170, and that d'Amico expected to

fill the remaining 170 days on the spot market.  Decl. of Luciano Bonaso ("Bonaso Decl.") at ¶

7.  In his deposition, however, Mr. Bonaso acknowledged that d'Amico's FFA agreement was

only for 45 days, and appears to be confused about whether d'Amico sought to cover 90 or 45

days of unemployment.  *See* Bonaso Depo. at 13:8-16; 19:3-21:11.

Mr. Bonaso's statements were also conflicted as to whether d'Amico was expecting a

hedge against its physical trade or an intended guaranteed profit from the Primera FFA.   Mr.

Bonaso states that he entered into this FFA to "cover the operating expenses of an unemployed

vessel [$12,000] and earn about $43,000 per day profit," with the $55,000 contract price.

Bonaso Decl. at ¶¶ 5, 8 (Dkt. #35); *See also* Bonaso Dep. at 21:6-19 (indicating that he was sure

that if he sold at 55, he could guarantee a profit of 43; *id.* at 27:20-24 (confirming that he

believed that the FFA was going to guarantee a profit of $43,000 for 45 days).  Mr. Bonaso's

attempt to explain his seeking guaranteed business income from the FFA as a hedge adds further

inconsistencies, because it requires the presumption of an employed, as opposed to an

unemployed ship.  According to Mr. Bonaso, although the Primera FFA would not have paid him

anything if it settled above 55,000, he would have a guaranteed income through spot-trading at

the higher market rate.  *See* Bonaso Dep. at 52:5-53:6.  This, however, entirely contradicts Mr.

Bonaso's representations that he sought to use the FFA to provide 90 (or 45) days of revenue for

ships that were unemployed, *id.* at 19:11-15; and that once he covered the 90 (or 45 days) of

employment with the FFA, he sought to fill *only* the remaining 170 (or 215) days of the spot

_____

[6] Mr. Bonaso also states that d'Amico "agreed to sell, and Primera agreed to buy *90 days* "BPI

Average 4 Panamax TC Routes" subject to the "New FFBA2007 form" terms.  Bonaso Decl. at ¶

9 (emphasis added).

market, *see* Bonaso Decl. at ¶7 ("This reduced our 'unemployed' days at that time to about – 170 days which I expected we could fill on the spot market."); *see* Bonaso Dep. at 62:6-9 (confirming that he expected to fill the 215 days with spot trading, and then to use the FFA for the balance of the 45 days).   These discrepancies suggest no identifiable purpose within d'Amico's shipping business for this FFA agreement, much less the specific purpose of providing financial protection for unemployed vessels or any particular vessel, *see* Albers Decl. at ¶ 21 (finding no linkage between the FFA and Mr. Bonaso's described intent for the FFAs).   The only clear representation Mr. Bonaso makes is that d'Amico did not enter this FFA to cover any particular d'Amico business or voyage route.  *See id.* at 30:6-33:24.

At best, d'Amico can claim only a more generalized business purpose of using its knowledge of its own business' charter bookings, to make what it may have considered to be a sure bet on the speculative market.

The record purporting to establish that the primary objective of this FFA was maritime commerce is both contradictory and bewildering.   Give that FFAs, at face value, are an instrument of financial speculation and presumably not tied to actual maritime commerce, d'Amico cannot, on this record, establish by a preponderance of the evidence, that the primary objective of this FFA was otherwise.

## CONCLUSION

In light of the foregoing, Defendant Primera respectfully requests that d'Amico's enforcement action be dismissed.

Respectfully submitted,

By: /s/ John J. Reilly

John J. Reilly
Corrine A. Irish (ci1106)
SQUIRE SANDERS (US) LLP
30 Rockefeller Plaza
New York, New York 10112
Tel:    (212) 872-9800
Fax:    (212) 872-9815
john.reilly@squirepb.com
corrine.irish@squirepb.com

Attorneys for Defendant
Primera (Hellas) Maritime, Ltd

-17-