UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                     :

D'AMICO DRY LIMITED,            :
                                    :
            Plaintiff,         :               09 CV 7840 (JGK)
                                    :              ECF CASE
          -vs-                    :
                                    :

PRIMERA MARITIME (HELLAS) LIMITED :
a.k.a. PRIMERA MARITIME LIMITED, SONIC :
FINANCE INC., MIRAGE FINANCE INC., :
NIKKA FINANCE INC., HANDY FINANCE :
INC., PASHA FINANCE INC., MOVIDA :
FINANCE INC., ELEMENT FINANCE INC., :
CALDERA MARINE CO. LTD., ADALIA :
MARINE CO. LTD., SEASATIN NAVIGATION :
INC., ANNAMAR NAVIGATION INC., :
SEASAFE NAVIGATION INC., CHEMNAV INC.:
PAUL CORONIS, NIKOLAOS CORONIS a.k.a. :
NICHOLAS CORONIS, PRIMEBULK :
SHIPMANAGEMENT LTD., PRIMERA OCEAN :
SERVICES S.A., BULKNAV INC., J.P.C. :
INVESTMENTS S.A. a.k.a. JPC INVESTMENTS :
S.A. and CHEMNAV SHIPMANAGEMENT LTD, :
                                    :
            Defendants,       :
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

| **CHALOS & Co, P.C.** | **BLANK ROME LLP** |
|---|---|
| 55 Hamilton Avenue | 405 Lexington Ave |
| Oyster Bay, NY 11771 | New York, NY 10174 |
| | |
| *Attorneys for Defendants* | *Attorneys for Defendants* |
| ADALIA MARINE CO. LTD., | SONIC FINANCE INC., MIRAGE |
| ANNAMAR NAVIGATION INC., | FINANCE INC., NIKKA FINANCE INC., |
| CALDERA MARINE CO. LTD., | HANDY FINANCE INC., PASHA |
| CHEMNAV SHIPMANAGEMENT LTD., | FINANCE INC., MOVIDA FINANCE |
| CHEMNAV INC., SEASAFE | INC., ELEMENT FINANCE INC., |
| NAVIGATION INC., and SEASATIN | PRIMEBULK SHIPMANAGEMENT |
| NAVIGATION INC. | LTD., and BULKNAV INC. |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. PROCEDURAL AND FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. MOTION STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. THE PRESENT AND PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. The VAC in the SDNY Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B. The EDTx Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. The SDTx Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV. JUDGMENT ON THE PLEADINGS AS TO THE MOVING DEFENDANTS
ON THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL . . . . . 13

    A. Res Judicata . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1. The Claims against Moving Defendants are Barred . . . . . . . . . . . . . . . . 15

        2. Res Judicata Claim Preclusion is Applicable Even though the
Moving Defendants were Not all Parties to the Prior Proceedings . . . . . . 18

    B. Collateral Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

<u>CASES</u>

*Allen v. McCurry*, 449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Alliance Network, LLC v. Sidley Austin LLP*, 987 N.Y.S.2d 794
   (N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 20, 21

*Amalgamated Sugar Co. v. NL Indus.*, 825 F.2d 645 (2d Cir. 1987) . . . . . . . . . . . . . . . . 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) . . . 3

*Bernhard v. Bank of America Nat. Trust & Savings Assn.*, 19 Cal. 2d 807,
   122 P. 2d 892 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Blonder-Tongue Labs. v. University of Illinois Found.*, 402 U.S. 313 (1971) . . . . . . . 22, 23

*Board of Managers of the 195 Hudson Street Condominium v. Jeffrey M. Brown
   Assocs., Inc.*, 652 F. Supp. 2d 463 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . .16, 21

*Buechel v. Bain*, 97 N.Y.2d 295, 766 N.E.2d 914, 740 N.Y.S.2d 252 (2001) . . . . . . . . . 21

*Carlin v. Gold Hawk Joint Venture*, 778 F. Supp. 686 (S.D.N.Y. 1991) . . . . . . . . . . . . . 18

*Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343 (2d Cir. 1995) . . . . . . . . . . 20

*Chen v. Fisher*, 6 N.Y. 3d 94 (N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Conopco, Inc. v. Roll Int'l*, 231 F.3d 82 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 100 S. Ct. 1460,
   64 L. Ed. 2d 1 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*d'Amico Dry Limited v. Pasha Finance Inc.*, 4:15-cv-39 (S.D. Tex.) . . . . . . . . . . . . *passim*

*Davidson v. Flynn*, 32 F.3d 27 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Day v. Moscow*, 955 F.2d 807 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996),
   cert. denied 519 U.S. 1007 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Expert Electric, Inc. v. Levine*, 554 F.2d 1227 (2d Cir. 1977), cert. denied 434 U.S.
   903, 98 S. Ct. 300, 54 L. Ed. 2d 190 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Federated Dep't Stores v. Moitie*, 452 U.S. 394, 101 S. Ct. 2424,
    69 L. Ed. 2d 103 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Flame S.A. v. m/v LYNX, et al.*, 10-cv-278 (E.D. Tex.) . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Flame S.A. v. Pasha Finance Inc.* (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Flame S.A. v. Primera Maritime (Hellas) Ltd., et al.* (E.D. Las. 2010) . . . . . . . . . . . . . . 13

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308
    (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . 15, 16

*Graziano v. Pataki*, 689 F.3d 110 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 37 S. Ct. 506, 61 L. Ed. 1148,
    1917 Dec. Comm'r Pat. 417 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Residential Capital, LLC*, 507 B.R. 477 (Bankr. S.D.N.Y. 2014) . . . . . . . . . . . . . . 16

*In re Teltronics Servs., Inc.*, 762 F. 2d 185 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 16

*Kerotest Mfg. Co. v. C-O-Two Co.*, 342 U.S. 180 (1952) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lucas v. Planning Board*, 7 F. Supp. 2d 310 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . 18

*Mac Pherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133 (E.D.N.Y. 2006) . . . . . . 3

*Manos v. Geissler*, 377 F. Supp. 2d 422 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . 14

*Monahan v. New York City De'pt of Corr.*, 214 F.3d 275 (2d Cir. 2000) . . . . . . . . . . . . 14

*Morris v. N.Y. State De'pt of Taxation and Fin.*, 82 N.Y.2d 135,
    603 N.Y.S.2d 807 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Olmstead v. Amoco Oil Co.*, 725 F. 2d 627 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . 16

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People ex rel. Spitzer v. Applied Card Sys., Inc.*, 863 N.Y.S.2d 615 (N.Y. 2008) . . . . . . 15

*Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Richards v. Jefferson County, Ala.*, 517 U.S. 793, 116 S. Ct. 1761,
135 L. Ed. 2d 76 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Samuels v. Air Transp. Local 504*, 992 F.2d 12 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . 2-3

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . 3

*Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 , 121 S. Ct. 1021, 149 L.
Ed. 2d 32 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Somerville House Management, Ltd. v. Arts & Entertainment Television Network*,
1993 U.S. Dist. LEXIS 5534 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys. LLC*, 842 F. Supp. 2d 502
(S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Strange v. Monefiore Hosp. & Med. Ctr.*, 59 N.Y. 2d 737 (N.Y. 1983) . . . . . . . . . . . . . . 15

*Syncora Guar., Inc. v. J.P. Morgan Sec. LLC*, 970 N.Y.S. 2d 526 (1st Dep't 2013) . . . . 19

*Tourangeau v. Uniroyal, Inc.*, 101 F.3d 300 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 18

*Transfield ER Cape Ltd. v. Indus. Carriers Inc.*, 571 F.3d 221 (2d Cir. 2009) . . . . . . . . 19

*United States Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*, 2001 U.S. Dist. LEXIS
3349 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Vets North, Inc. v. Libutti*, 2003 U.S. Dist. LEXIS 27675 (E.D.N.Y. 2003) . . . . . . . . . . 18

*Waldman v. Village of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . 3

*Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir. 1992), cert. denied 506 U.S. 1053,
122 L. Ed. 2d 131, 113 S. Ct. 977 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## OTHER AUTHORITIES

FED. R. CIV. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

FED. R. CIV. P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 23

FED. R. CIV. P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 23

Restatement (Second) of Judgments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## INTRODUCTION

**COME NOW**, Defendants Adalia Marine Co. Ltd. ("Adalia"), Annamar Navigation Inc. ("Annamar"), Caldera Marine Co. Ltd. ("Caldera"), Chemnav Inc. ("Chemnav"), Chemnav Shipmanagement Ltd. ("Chemnav Shipmanagement"), Seasafe Navigation Inc. ("Seasafe"), and Seasatin Navigation Inc. ("Seasatin") by and through counsel Chalos & Co, P.C., and Defendants Bulknav Inc. ("Bulknav"), Element Finance Inc. ("Element"), Handy Finance Inc. ("Handy"), Mirage Finance Inc. ("Mirage"), Movida Finance Inc. ("Movida"), Nikka Finance Inc. ("Nikka"), Pasha Finance Inc. ("Pasha"), Primebulk Shipmanagement Ltd. ("Primebulk"), and Sonic Finance Inc. ("Sonic"), by and through counsel Blank Rome LLP, (hereinafter collectively referred to collectively as "Defendants" or "moving Defendants"), and submit this Memorandum of Law and the accompanying Declaration of George M. Chalos, Esq., in support of Defendants' Joint Motion for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure Rule 12(c) and Rule 54(b).  For the reasons more fully set forth below, the aforementioned moving Defendants respectfully submit that this case must be dismissed as a matter of law.

## I.        PROCEDURAL AND FACTUAL BACKGROUND

For the sake of brevity, Defendants will not repeat the lengthy procedural history of this matter.  Instead, Defendants provide the following salient facts and procedural background relevant to the resolution of the present motion to dismiss.  Plaintiff d'Amico Dry Limited ("d'Amico"), through its Verified Amended Complaint ("VAC"), dated December 23, 2010, seeks recognition and enforcement of Plaintiff's foreign judgment obtained solely against Defendant Primera Maritime (Hellas) Ltd. ("Primera") by the English High Court on September 11, 2009.  Plaintiff also seeks the Court to recognize and enforce the High Court judgment

1

against the moving Defendants, as alleged alter-egos of Primera.  *See* Chalos Decl., at **Exhibit A**, ¶¶ 20-88.

Plaintiff's VAC is replete with misleading statements and conclusory alter-ego allegations, which are based on nothing more than ambitious speculation cleverly characterized as "information and belief."  The remaining factual allegations rely on the very same information and documentation in support of the claim for alter-ego liability which Plaintiff has already litigated and lost in two (2) prior Federal Court proceedings. *See Flame S.A. v. m/v LYNX*, *et al*., 10-cv-278 (E.D. Tex.) (hereinafter the "EDTx proceedings"); *d'Amico Dry Limited v. Pasha Finance Inc.,* 4:15-cv-39 (S.D. Tex.) (hereinafter the "SDTx proceedings").  Now, Plaintiff d'Amico seeks to improperly submit the same allegations; relying on the same evidence; in hope that this Court will improperly allow for a "do-over" on Plaintiff's alter-ego claims which District Judge Clark found, after discovery and a robust evidentiary hearing on the merits, did <u>not</u> meet the burden to pierce Primera's corporate veil.  *See* Chalos Decl., at **Exhibit B**.  More recently, District Judge Ellison found that these same, conclusory allegations <u>did</u> <u>not</u> <u>even</u> <u>meet</u> the *prima facia* burden to sustain a Rule B attachment of Pasha Finance Inc.'s property.  *See* Chalos Decl., at **Exhibit C**.

## II.      <u>MOTION STANDARD OF REVIEW</u>

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *Id.* "In considering a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings, the Court applies the same standards used for the determination of a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim." *Soroof Trading Dev. Co. v. GE Fuel Cell Sys. LLC*, 842 F. Supp. 2d 502, 509 (S.D.N.Y. 2012); *see also Samuels v. Air Transp. Local 504*,

992 F.2d 12, 15 (2d Cir. 1993) (The Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.").

In considering a motion for a judgment on the pleadings, the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences in favor of the non-movant. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). "To survive a Rule 12(c) motion, the complaint must contain sufficient  factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"Res judicata is a proper basis for dismissal under Rule 12(c)." *Mac Pherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (affirming dismissal pursuant to Rule 12(c) on res judicata grounds).  A collateral estoppel defense may also be analyzed on a Rule 12(c) motion, where, as here, all the relevant facts are set forth in the VAC and in matters of which the Court may take judicial notice, such as the EDTx and SDTx proceedings. *See United States Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*, 2001 U.S. Dist. LEXIS 3349, *77, n. 17 (S.D.N.Y. 2001) (Koeltl, J.) (citing *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2d Cir. 2000) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (same)).

Under Rule 54(b), moving Defendants are entitled to judgment without delay giving full faith and credit to the decisions of District Judge Clark in the EDTx proceeding and Judge Ellison in the SDTx proceeding, thus barring d'Amico's claims under the doctrines of res judicata and collateral estoppel. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980) (affirming use of Rule 54(b) by District Court to grant judgment to one or more, but fewer than all, of the claims or parties when there is "no just reason for delay" in the entry of judgment).

## III.      THE PRESENT AND PRIOR PROCEEDINGS

Plaintiff's VAC against the moving Defendants is nothing more than an attempt at an inappropriate third "bite at the apple" to re-litigate the substantive merits of previously ruled upon veil piercing and alter-ego allegations against Primera. Plaintiff d'Amico is barred by the doctrines of res judicata and collateral estoppel from retrying these claims and issues. The moving Defendants respectfully submit to the Court the following comparative factual analysis of the allegations contained in the present VAC against the prior judgments and orders issued by District Judge Clark and District Judge Ellison.

### A.  The VAC in the SDNY Proceedings

Plaintiff d'Amico's VAC is premised upon conclusory alter-ego allegations based "upon information and belief" and which fail to assert any substantive, articulated grounds in support of the allegations of alter-ego. *See* Exhibit A, at ¶¶ 20-23, 26, 35-42, 57-63, 68-78, 81-88.[1] Accordingly, these "allegations" provide no basis for the continued maintenance of the present

---

[1] It is well-settled that "conclusory allegations of alter ego are insufficient to survive a motion to dismiss." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 324 (S.D.N.Y. 2009); *see also Manos v. Geissler*, 377 F. Supp. 2d 422, 425 (S.D.N.Y. 2005) ("Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff describes, are insufficient as a matter of law").

lawsuit against moving Defendants, as they are wholly speculative. Plaintiff has attempted to supplement its unsubstantiated and conclusory allegations with the use of four (4) documents, all of which were documents available (and used) during the two (2) prior proceedings, and a series of purportedly corresponding factual allegations taken from those documents. These allegations are broken down into the following categories:

1.  **May Facilities Agreement** (May 21, 2008) – That Defendants Mirage, Sonic, Nikka, Handy, Pasha, Movida, Element, Caldera, and Adalia are joint and several borrowers on a loan agreement for vessel financing. Plaintiff asserts that: Primera was the corporate guarantor for the loan, Paul Coronis and Nikolaos Coronois personally guaranteed the loan, that the address for "notices" was c/o Primera Maritime Ltd. at 6 Roupel Street, Athens-Lamia Road, Km 17, Kifisia, 145 64, Athens, Greece, and that Evangelos Bairactaris executed the documents as attorney on behalf of the Defendants. *See* ¶¶ 27-33.

2.  **April Facilities Agreement** (April 23, 2007) – That Defendants Annamar, Seasatin, Seasafe, and non-party Camela Navigation Inc. are joint and several borrowers on a loan agreement for vessel financing. Plaintiff asserts that Chemnav Inc. was the corporate guarantor for the loan, Paul Coronis and Nikolaos Coronis personally guaranteed the loan, that the address for "notices" was c/o Primera Maritime Ltd. at 6 Roupel Street, Athens-Lamia Road, Km 17, Kifisia, 145 64, Athens, Greece, and that Evangelos Bairactaris executed the documents as attorney on behalf of the Defendants. *See* ¶¶ 43-51.

3.  **ISDA Agreement** (April 23, 2007) - That Defendants Annamar, Seasatin, Seasafe, and non-party Camela Navigation Inc. entered into an agreement with non-party HSH Nordbank AG, that Annamar, Seasatin, Seasafe, and non-party Camela Navigation Inc. had joint and several liability under the ISDA Agreement, that the address for "notices" was c/o Primera Maritime Ltd. at 6 Roupel Street, Athens-Lamia Road, Km 17, Kifisia, 145 64, Athens, Greece, and that Evangelos Bairactaris executed the documents as attorney on behalf of the Defendants. *See* ¶¶ 52-56.

4.  **Third Supplemental Agreement to the May Facility Agreement** – That Defendants Primebulk, Bulknav and Primera Ocean replaced Primera as corporate guarantors, but that the contact address and phone number (from Primera) remained unchanged. *See* ¶¶ 64-67.

As set forth in detail below, these claims, issues, and precise evidence have been reviewed and fully adjudicated by District Judge Clark in the prior proceedings in the Eastern District of Texas, wherein the Court found that the evidence was insufficient to pierce Primera's corporate veil and render any sort of finding of alter-ego.  District Judge Ellison in the Southern District of Texas also held that the claims, issues, and evidence were insufficient to sustain an ex parte Rule B action seeking to pierce Primera's corporate veil and to obtain a finding of alter-ego against Pasha.

### B.  The EDTx Proceedings

On May 13, 2010, Flame S.A. commenced an arrest action in the Eastern District of Texas in order to enforce an English Judgment rendered against Primera. *Flame S.A. v. m/v LYNX, et al*., 10-cv-278 (E.D. Tex.).  The arrest[2] was predicated on the plaintiffs' conclusory allegations, made "upon information and belief", that the LYNX was 'beneficially owned' by Primera and that the Defendants, Camela Navigation, Chemnav Shipmanagement Inc.,[3] and Paul Coronis, among others, were the corporate alter-egos of Primera.  Plaintiff d'Amico intervened in the action on June 25, 2010; adopted the alter-ego allegations of Flame S.A.; was duly represented by counsel throughout the matter; and fully participated throughout the EDTx proceedings, including the evidentiary hearing held by District Judge Clark on July 27, 2010. *See* Chalos Decl. at **Exhibit D**.

All of the documents and information that are referenced and relied upon in Plaintiff's SDNY VAC were previously part of the discovery exchanged in the Eastern District of Texas

---

[2] The "arrest" of the vessel was improper, however the District Court permitted plaintiffs to convert the seizure to a Rule B attachment on the allegation that the M/V LYNX was the beneficial property of Primera.

[3] Chemnav Shipmanagement is also named as a defendant in the SDNY VAC and is a moving Defendant herein.

litigation and, in fact, were trial exhibits at the July 27, 2010 hearing.  Plaintiff d'Amico's Verified Complaint in the EDTx proceedings contained the following allegation related to piercing Primera's corporate veil, "At all material times, Defendants or one of their alter ego subsidiaries, <u>including</u>, <u>but not limited to</u>, Chemnav Shipmanagement, Ltd are corporations or other business entities duly organized and existing under and by virtue of the laws of a foreign country . . ." *See* Chalos Decl., at Exhibit D, ¶ 5 (emphasis added). The Facility Agreements and ISDA Agreement, which represent the only substantive allegations in support of d'Amico's alter-ego claims, were all relied upon by d'Amico (and the other plaintiffs) in the EDTx proceedings and were thoroughly reviewed by District Judge Clark in his analysis of the plaintiffs' attempt to pierce the corporate veil of Primera.  *See* Chalos Decl., at Exhibit B.

Following the attachment of the M/V LYNX, Camela Navigation (the registered owner of the Vessel),[4] moved to vacate the attachment. In opposition to the motion to vacate the attachment, plaintiffs made the following substantive arguments in support of continued attachment and the alter-ego allegations:

> There is also a Loan Facility agreement for four (4) tank vessels which establishes that Primera, through the Coronis family, is the beneficial owner of the m/v LYNX. (Exhibit H.) Pursuant to Clause 33.2 of the "Tank Vessel" Loan Agreement, entitled ADDRESSES AND COMMUNICATIONS, notice was to be sent to:
>
> > Chemnav Inc.
> > c/o Primera Maritime Ltd.
> > National Road Athens-Lamia

---

[4] Mirage, Sonic, Nikka, Handy, Pasha, Movida, Element, Adalia, Annamar, Caldera, Seasatin, and Seasafe are all shipowning companies and the claims, issues, and evidence submitted by d'Amico in the SDNY VAC in support of the claim of alter-ego and piercing the corporate veil of Primera are identical to the exact facts and evidence which District Judge Clark found to be insufficient in the EDTx proceedings and which District Judge Ellison ruled did not even suggest an "indicia" of alter-ego.  *See* Point IV, *infra*.

> 6 Roupel Str.,
> 145 64 Kifissia
> Greece
> Attention: Mr. Paul Coronis

The Loan Facility from HSH Nordbank for US $67.5 million refers to four (4) vessels, including the registered owner of the m/v LYNX, Camela Navigation, Inc. The Corporate guarantor is Chemnav Shipmanagement, an alter ego of the Coronis family. A search of the Chemnav Shipmanagement website yields the same address as Primera, and no identification of the officers, directors or key employees. (Exhibit P.) The Schedule to the Loan Facility lists Primera as the Notify Party and Paul Coronis as the contact person. (ISDA Master Agreement and Schedule is attached as Exhibit G.) Chemnav Shipmanagement Ltd. was established on July 4, 2006. A proxy of an organizational meeting was issued on July 4, 2006 in favor of Paul Coronis. Paul Coronis appeared for an organizational meeting on July 5, 2006 and appointed himself and his lawyer, Evangelos Bairactaris, as directors. Then, at a meeting of board of directors of July 5, 2006, they were appointed president and secretary-treasurer respectively. Following a meeting of board of directors on March 11, 2008, the establishment of an office in Greece was resolved. An office was established at 6 Roupel Street, Kifissia with the lawful representative being Paul Coronis. The company has undertaken the management of the vessels LYNX, POLARIS, SATURN and COMMENCEMENT. The management declarations issued by the shipowning companies of the first three vessels were signed by Nikolaos Coronis as director. The fee to establish Chemnav was paid by Primera.

Under a separate facility agreement entered into in May 2008 (the "Bulk Vessel Facility Agreement"), Primera was listed as the corporate guarantor of various new shipbuilding contracts. (A copy of the Bulk Vessel Facility Agreement is attached as Exhibit I.) Under the Facility Agreement, the term "fleet vessels" was defined as all the vessels from time to time owned by members of the Group. (Exhibit H, p. 9.) The term "Group", was defined as the "Borrowers, the Corporate Guarantor and any other ship owning companies directly or indirectly owned by any holding company from time to time during the Security Period and "members of the group" shall be construed accordingly." Again, pursuant to clause 33.2, notices under the Bulk Vessel Facility Agreement were to be given to:

> c/o Primera Maritime Ltd.
> National Road Athens-Lamia
> 6 Roupel Str.,
> 145 64 Kifissia
> Greece

The Facility Agreement dated April 23, 2007, which related to the m/v LYNX, was signed by Evangelos Biaractaris [sic], long-time counsel to Primera and Director of Chemnav. Evangelos Biaractaris [sic] signed the Tank Vessel Loan

> Agreement (Exhibit H) on behalf of all **four (4) shipping companies**. The Bulk Vessel Facility Agreement dated May 2008 was also signed by Evangelos Biaractaris [sic] for **all 9 companies**. On October 15, 2008, he countersigned on behalf of Primera Maritime (Hellas) Ltd. Paul and Nikolaos Coronis also countersigned the agreement on October 15, 2008.

*See* Chalos Decl., **Exhibit E**, at pp. 3-5 (emphasis in original); *cf.* Exhibit A, SDNY VAC ¶¶ 20-88.

Simply stated, all of the purported "evidence" in support of d'Amico's claims and issues raised in the present action were squarely before the Court in EDTx when faced with the question of piercing Primera's corporate veil (or not). *See* Chalos Decl., Exhibit B.  Specifically, the Facility Agreements, and the purported factual evidence of "alter-ego" contained therein, were prominent exhibits during several hearings before District Judge Clark.  In addition, District Judge Clark permitted expansive discovery wherein thousands of pages of documents were produced to the plaintiffs relating to Camela Navigation's incorporation, balance sheets, financing, loan agreements, shipbuilding contracts, tax returns, insurance documents, etc.  All documentation relating to Chemnav Shipmanagement (who was serving as the manager of the M/V LYNX and is a Defendant here) was also produced and examined carefully.  Many of the documents included the identity of the affiliated companies that d'Amico now claims are alter-egos of Primera.

Ultimately, District Judge Clark conducted an evidentiary hearing on where Primera's corporate veil can and/or should be pierced and whether there was any merit to Plaintiffs' alter-ego allegations on July 27, 2010.   Several live witnesses, including Paul Coronis and a representative of Primera, testified under oath and nearly two hundred (200) exhibits were entered into evidence. d'Amico appeared at the hearing through its counsel and had every opportunity to question Mr. Coronis (and the other witness) at that time about *inter alia*, the

9

companies d'Amico now alleges are alter-egos of Primera, the Facility Agreements cited to in the SDNY VAC; the corporate structure and management of Primera; the financing agreements and the loans among the companies and alleged alter-egos; shipbuilding contracts; addresses, telephone numbers and offices of various companies; the identification and roles of alleged common employees, shareholders, and directors; the business departments and management of various companies within the alleged group purportedly controlled by Paul Coronis and which d'Amico now alleges are alter-egos of Primera; the incorporation of the alleged alter-ego entities; corporate and personal guarantees; financial returns; and/or any other questions regarding corporate formalities and structuring.

Following the hearing, District Judge Clark issued a comprehensive ruling setting out his findings of fact and conclusions of law on the issue of alter-ego in a thirty-one (31) page Order issued on August 6, 2010. *See* Chalos Decl. at Exhibit B. In short, District Judge Clark ruled that Plaintiffs' evidence failed to demonstrate by a preponderance of the evidence, that Primera's corporate veil should be pierced and rejected Plaintiff's alter-ego allegations. *Id.*, at pp. 29-30. Plaintiff had due opportunity to appeal District Judge Clark's order in accordance with the Federal Rules of Appellate Procedure, however, failed, neglected and/or otherwise elected not to do so. Now, the time to appeal has long since expired. Nevertheless, d'Amico improperly and inequitably seeks "another bite of the apple" in this Court some five plus (5+) years later.

Despite all of the discovery, exhibits, evidence, and live witnesses, including testimony from Paul Coronis (among others), d'Amico's SDNY VAC relies upon the same evidence and unsupported conclusory allegations of alter-ego which District Judge Clark comprehensively resolved. Plaintiff has merely re-asserted, upon information and belief, that Primera's corporate veil should be pierced, but has not levied any factual allegations or evidence different from that

which has been considered in the EDTx proceeding and found to be insufficient to warrant such a drastic disregard of the corporate form by this Court.  Accordingly, judgment in favor of the moving Defendants is warranted and d'Amico's claims must be dismissed on res judicata and collateral estoppel grounds.

### C.   The SDTx Proceedings

On January 9, 2015 d'Amico, in attempting a second bite at the apple in its fruitless efforts to pierce Primera's corporate veil, commenced another Rule B action against Pasha, by filing a Verified Complaint wherein it sought to recover, again, on the very same English Judgment against Primera. *See* Chalos Decl., at **Exhibit F**.  Plaintiff d'Amico alleged the Pasha was a shell-corporation of Primera. *Id*., at ¶ 31.  Plaintiff d'Amico also once again referred to the Facilities Agreement as the vehicle which connected the defendants as purported alter-egos. *Id*., at ¶ 35. On January 16, 2015, District Judge Ellison vacated the Rule B attachment after a lengthy hearing determining that d'Amcio failed to make out even a *prima facie* claim of alter-ego against Pasha. *See* Chalos Decl., at Exhibit C.  During the hearing the following colloquy took place, wherein District Judge Ellison highlighted the glaring lack of even a superficial indicia of alter-ego:

> THE COURT: Well, Mr. Tisdale, with the utmost respect, I don't think I even have superficial indicia. The fact that there were overlapping officers and directors means nothing. I mean, that's true in every bank, every sophisticated corporation, every limited partnership. That's just the way things are done. Now, the fact that there was some cross-collateralization or cross-guaranteeing, that might get there, but that would be -- what I need to see, then, would be that Pasha was stepping forward to collateralize or guarantee some of Primera's debts, because that would suggest -- there would be no reason to do that except that Pasha and Primera were linked financially. They would otherwise have no reason to guarantee another party's debts, anymore than I would have reason to guarantee somebody else's debts. But I haven't heard even that much. And that would not be dispositive, but that would be some evidence. I mean, it could be that Primera and Pasha cross-collateralized each other's debts, which, you know, under some states, that a fraudulent conveyance and some states it's not.

MR. TISDALE: Your Honor, first of all, it doesn't have to be a fraudulent conveyance.

THE COURT: I know that. I'm looking for any indicia, any indicia at all.[5]

MR. TISDALE: Well, the indicia -- first of all, when I used the term "superficial indicia," that is defined as overlapping officers and directors.

THE COURT: No, that's not enough. That's just not enough.

MR. TISDALE: No, no, I understand that, Your Honor, and I agree that superficial indicia is not enough. But we have more than sufficient superficial indicia and then – but something else is this loan agreement where you have the guaranteeing going on of the obligations and the cross-collateralization going on between these companies, that -- that's the something more that has always been found to be sufficient to establish probable cause. And if Your Honor gives me an hour, I will provide those authorities also. I did not realize that we were back to the alter-ego issue.

THE COURT: I'm sorry, if I sent –

MR. TISDALE: I tried to address Your Honor's other questions.

THE COURT: I'm sorry if I sent misleading signals, but that's always been the one that troubled me the most. It troubled me the most when I saw the original petition.

*See* Chalos Decl., at Exhibit C, p. 44, ln. 11 – p. 46, ln. 4.

---

[5] As the Second Circuit Court of Appeal has elaborated, it is not enough to merely allege alter-ego factors in order to pierce the corporate veil. "Actual domination, rather than the opportunity to exercise control, must be shown." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d. Cir. 1996), cert. denied, 519 U.S. 1007 (1996). However, "while complete domination of the corporation is the key to piercing the corporate veil . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required." *Morris v. N.Y. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141-42, 603 N.Y.S.2d 807, 811 (1993). In the instant matter, Plaintiff's pleadings fail to show—or even to allege—any fraud or "actual domination" by Primera over any of the moving Defendants. *See* Plaintiff's VAC.

### IV.   JUDGMENT ON THE PLEADINGS AS TO THE MOVING DEFENDANTS ON THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL

As set forth above, Plaintiff has already litigated (and lost) the issue of Primera's corporate alter-egos in the proceeding held before District Judge Ron Clark in the Eastern District of Texas (Beaumont Division). *Flame S.A. v. m/v LYNX, et al*., 10-cv-278 (E.D. Tex.). District Judge Clark's extensive and well-reasoned ruling clearly and unambiguously found that d'Amico failed to establish by a preponderance of the evidence that Primera's corporate veil could be pierced to enforce, against alleged alter-egos, a foreign judgment obtained against Primera. *See* Chalos Decl., Exhibit B.  In the SDTx proceeding, Plaintiff's Rule B attachment was immediately vacated as District Judge Ellison found the complaint in that action did not even make out a *prima facie* claim of alter-ego against Pasha.[6] *d'Amico Dry Limited v. Pasha Finance Inc.,* 4:15-cv-39 (S.D. Tex.).

Plaintiff has failed to introduce any evidence, documents, and/or allegations in its SDNY VAC in support of its claims or issues, which were not previously reviewed and considered comprehensively and substantively decided by at least two (2) Federal Courts.  It would be improper to allow d'Amico a third (and possibly fourth)[7] "do-over" on the same claims, same

---

[6] d'Amico alleges that Pasha, Sonic, Mirage, Nikka, Movida, Handy, and Element are similarly situated and thus District Judge Ellison's finding that d'Amico could not make out a *prima facie* claim that Pasha was Primera's alter ego applies to all.

[7] Also during the summer of 2010, Flame S.A. filed two (2) other attachment cases seeking to attach vessels which were allegedly beneficially owned by Primera. *See Flame S.A. v. Primera Maritime (Hellas), Ltd., Mirage Finance Inc., Paul Coronis, and Nikolaos Coronis* (E.D. La. 2010); *Flame S.A. v. Pasha Finance Inc.* (C.D. Cal. 2010).

13

issues, and reliance on the same evidence which have already been fully and finally ruled upon by District Judge Clark and District Judge Ellison.  It is respectfully submitted that judgment on the pleadings should be granted and d'Amico's VAC should be dismissed as to the moving Defendants on the grounds of res judicata and collateral estoppel.

### A. <u>Res Judicata</u>

As the Supreme Court of the United States has stressed, "[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is ***a rule of fundamental and substantial justice***, 'of public policy and of private peace' which should be cordially regarded and enforced by the courts." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 401, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981) (quoting *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S. Ct. 506, 61 L. Ed. 1148, 1917 Dec. Comm'r Pat. 417 (1917) (emphasis added). Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were <u>or could have been raised</u> in the prior action. *See Allen v. McCurry*, 449 U.S. 90, 92 (1980); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

Under well settled principles of New York Law,[8] the doctrine of res judicata, or claim preclusion, "bars successive litigation based upon the same transaction or series of connected

___

Although not commenced by d'Amico, Plaintiff had counsel in attendance and/or monitoring the developments in each matter.  Both Rule B attachments were ultimately dismissed on the grounds that one (1) or more of the defendants could be "found in the District" and therefore the conditions of Supplemental Rule B had not been satisfied.  Evidencing the fact that plaintiffs were merely looking to exert commercial pressure, the actions were dismissed once the attachments were vacated and d'Amico never attempted to pursue alter-ego claims in either case.

[8] There is no discernable difference between New York and federal law regarding claim preclusion. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001).

transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Alliance Network, LLC v. Sidley Austin LLP*, 987 N.Y.S. 2d 794, 811 (N.Y. 2014) (citing *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 863 N.Y. S. 2d 615 (N.Y. 2008)). Notably, for purposes of establishing res judicata, a "judgment on the merits" is not necessarily a judgment based upon a full trial of contested facts – it may, for example, be a default judgment, a judgment on stipulation or agreement, or a dismissal of a claim with prejudice. *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 348 (S.D.N.Y. 2012) (internal citations omitted). The prior judgment need not contain "the precise words 'on the merits' in order to [have] res judicata effect; it suffices that it appears from the judgment that the dismissal was on the merits." *Strange v. Montefiore Hosp. & Med. Ctr.*, 59 N.Y. 2d 737 (N.Y. 1983).

    1.  *The Claims against Moving Defendants are Barred*

Plaintiff's claims pending in this Court are based on the same facts and evidence (*i.e.* transaction) as presented in the EDTx and SDTx proceedings. District Judge Clark dismissed d'Amico's claim seeking to pierce Primera's corporate veil, determining after a full evidentiary hearing on the merits that the evidence was insufficient to find either Camela Navigation or Chemnav Shipmanagement were alter-egos of Primera. District Judge Ellison also determined, after an evidentiary hearing, that d'Amico, six (6) years after filing its original complaint in the SDNY, failed to offer any evidence that would demonstrate a *prima facie* case that Primera's corporate veil should be pierced and/or Pasha could be found to be an alter-ego of Primera.  As d'Amico's claims to pierce the corporate veil of Primera to enforce its English Judgment have been reviewed and rejected twice by two (2) different Federal Courts, moving Defendants are

entitled to judgment on the pleadings and dismissal based on the doctrine of res judicata. Accordingly, the claims are absolutely barred against Chemnav Shipmanagement and Pasha.

"In considering whether claims asserted in a subsequent suit were, or could have been, raised in a prior proceeding, courts look to 'whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether facts essential to the second were present in the first." *See Gianatasio v. D'Agostino*, 862 F. Supp. 2d at 348.  The doctrine applies "not only as to what was pleaded, but also to what could have been pleaded." *In re Teltronics Servs., Inc*., 762 F. 2d 185, 193 (2d. Cir. 1985).  "[R]es *judicata* bars cases that arise from the same "operative nucleus of fact." *In re Residential Capital, LLC*, 507 B.R. 477, 491 (Bankr. S.D.N.Y. 2014) (citing *Olmstead v. Amoco Oil Co*., 725 F. 2d 627, 632 (11th Cir. 1984)).  To determine whether particular claims are part of the same transaction, New York courts analyze "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Board of Managers of the 195 Hudson Street Condominium v. Jeffrey M. Brown Assocs., Inc*., 652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009) (citing *Chen v. Fisher*, 6 N.Y. 3d 94 (N.Y. 2005)).

The claims asserted against moving Defendants Seamar, Seasatin, Annamar, and Chemnav Inc. are based solely on the alleged contents of the April Facilities Agreement and the ISDA Agreement. *See* Chalos Decl., Exhibit A, ¶¶ 43-56.   District Judge Clark has already reviewed these Agreements comprehensively, as well as the live testimony presented at the evidentiary hearing on July 27, 2010, and concluded that the contents of the Agreements were insufficient evidence to pierce the corporate veil of Primera.  Accordingly, as d'Amico's claims against Seamar, Seasatin, Annamar, and Chemnav Inc. are based on the same operative nucleus

of facts and evidence raised in the EDTx proceedings and ruled upon by District Judge Clark, these Defendants must also be granted judgment in their favor and the VAC dismissed on the grounds of res judicata.

The claims asserted against Defendants Mirage, Sonic, Nikka, Handy, Movida, Element, Caldera, and Adalia (who are alleged joint and several parties to the May Facilities Agreement); and PrimeBulk, Bulknav, and Primera Ocean (who were alleged replacement corporate guarantors on the agreement) are based solely on the contents of the May Facilities Agreement. The May Facilities Agreement was a prominent exhibit in the EDTx proceedings, was referred to in the plaintiffs' motion briefing and at hearings in EDTx, was testified about by Mr. Paul Coronis before District Judge Clark at the July 27, 2010 evidentiary hearing, and was relied upon in support of d'Amico's SDTx proceedings intended to pierce the corporate veil and obtain an alter-ego finding against Pasha. *See* Exhibit F, at ¶¶ 31-47. The claims by d'Amico that the May Facility Agreement (and its contents) purportedly give rise to evidence which could support piercing Primera's corporate veil and support a finding of alter-ego were substantively rejected by District Judge Ellison in January 2015. *See* Point II C, *supra*. As these claims were part of the same nucleus of operative facts and evidence in the EDTx proceedings, and asserted (and rejected) by District Judge Ellison in the SDTx, Defendants Mirage, Sonic, Nikka, Handy, Movida, Element, Caldera, Adalia, PrimeBulk, Bulknav, and Primera Ocean are entitled to judgment on the pleadings and must all be dismissed.

As the Second Circuit Court of Appeals has held, "Whatever legal theory is advanced, *when the factual predicate upon which claims are based are substantially identical*, the claims are deemed to be duplicative for purposes of res judicata." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992), cert. denied, 506 U.S. 1053, 122 L. Ed. 2d 131, 113 S. Ct. 977 (1993)

(quoting *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977), cert. denied, 434 U.S. 903, 98 S. Ct. 300, 54 L. Ed. 2d 190 (1977)) (emphasis added).  It is clear in this case that Plaintiff d'Amico's VAC and claims in support of piercing the corporate veil of Primera are based on the exact same factual predicate and evidence that has already been resolved by District Judge Clark and District Judge Ellison.

> 2. *Res Judicata Claim Preclusion is Applicable Even though the Moving Defendants Were Not all Parties to the Prior Proceedings.*

Res judicata claim preclusion bars a second suit "involving the same parties *or their privies.*" *Semtek Int'l, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 502, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001) (emphasis added; internal quotation marks omitted). As the Supreme Court of the United States has observed, the term "privity" is now used broadly "to describe various relationships between litigants that would not have come within the traditional definition of that term." *Richards v. Jefferson County, Ala.,* 517 U.S. 793, 798, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (1996) (citing Restatement (Second) of Judgments); *see also Tourangeau v. Uniroyal, Inc.,* 101 F.3d 300, 306-07 (2d Cir. 1996); *Amalgamated Sugar Co. v. NL Indus.*, 825 F.2d 634, 640 (2d Cir. 1987); *see also Vets North, Inc. v. Libutti*, 2003 U.S. Dist. LEXIS 27675, at *11 (E.D.N.Y., 2003) (stating that courts "have broadly construed the concept of privity . . . to include any situation in which the relationship between the parties is sufficiently close to justify preclusion") (internal quotation and citation omitted).  For the purposes of res judicata, the doctrine of privity "is to be applied with flexibility." *Amalgamated Sugar Co.*, 825 F.2d at 640. "Formal participation in litigation . . .[is] not a prerequisite to barring successive litigation." *Lucas v. Planning Board*, 7 F. Supp. 2d 310, 327 (S.D.N.Y. 1998). All that is necessary is a showing that "the interests of the nonparty were adequately represented in the first action." *Carlin v. Gold Hawk Joint Venture*, 778 F. Supp. 686, 691 (S.D.N.Y. 1991).

Accordingly, the res judicata doctrine is applicable in the "alter ego" context. By way of example, in *Alliance Network, LLC v. Sidley Austin LLP*, 987 N.Y.S. 2d 794 (N.Y. 2014), a group of plaintiffs participated in an arbitration with a party, NAMA, arising out of a real estate dispute. The Plaintiffs claimed that they entered into an agreement with NAMA, and that NAMA purportedly breached the agreement. 987 N.Y.S. 2d at 810-812. The arbitration panel refused to award damages to plaintiffs. *Id*. Plaintiffs subsequently filed a lawsuit in New York Supreme Court against Alliance Brothers, asserting the same issues and claiming that Alliance Brothers was the "alter ego" of NAMA. *Id*. The plaintiffs claimed that because Alliance Brothers were not parties to the previous arbitration, then the "new" claim against them in the subsequent New York state Court action was viable. *Id*. at 811. However, Judge Bransten correctly noted that "this argument contains a fatal flaw." By arguing that the NAMA and Alliance Brothers werer alter egos, this resulted in an admission that the two (2) parties were "in privity" of each other. *Id*. As such, plaintiff's own allegations in the second action (against Alliance Brothers) supported a finding of privity for res judicata purposes with respect to the first action (against NAMA). *Id*., referring to *Syncora Guar., Inc. v. J.P. Morgan Sec. LLC.*, 970 N.Y.S. 2d 526 (1st Dep't 2013). Thus, the claims were barred via res judicata. *Id*.

Taking the privity analysis of the res judicata doctrine one step further, the Court's attention must be drawn to the fact that Plaintiff's only allegation in support of personal jurisdiction over the moving Defendants is on the grounds that they are the "alter-egos" of Primera. *See* Dkt. 110, pp. 10-11, citing *Transfield ER Cape Ltd. v. Indus. Carriers Inc*., 571 F.3d 221 (2d Cir. 2009). Plaintiff d'Amico absolutely cannot have it both ways, asserting on the one hand that this Court must disregard the corporate form of the sixteen (16) moving Defendants who are not otherwise subject to the personal jurisdiction of the Court (but for

plaintiff's conclusory allegations that they are alter-egos of Primera) in order to exercise personal jurisdiction over them; but then argue in opposition to the application of the res judicata (and collateral estoppel) doctrine on the basis that moving Defendants were not "parties" to the prior EDTx and/or SDTx proceedings.  If the Defendants are subject to the personal jurisdiction of this Court on the basis of conclusory alter-ego allegations, (coupled with Primera's now defunct registration with the State of New York), then it is respectfully submitted that the moving Defendants are in "privity" with Primera, Camela Navigation, Chemnav Shipmanagement, and Pasha such that  res judicata  bars d'Amico's attempt to relitigate its alter-ego claims here.

When an asserted claim is identical to one that has been previously litigated, "relitigation may be barred to conserve judicial resources and to allow the prevailing party to enjoy the benefits of its victory and avoid further costs." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995).  Plaintiff d'Amico timely intervened in the EDTx proceedings, attended and had a full and fair opportunity to present their claims during the evidentiary hearing held by District Judge Clark on the question of whether Primera's corporate veil should be pierced upon the same facts and evidence Plaintiff seeks to offer here.   As d'Amico's claims asserted against the alleged 'alter ego' Defendants in the SDNY VAC arise from the same "operative nucleus of fact" and evidence as the claims in EDTx and SDTx, d'Amico's claims are barred by res judicata and judgment must be entered in favor of moving Defendants.

**B.  Collateral Estoppel**

Collateral estoppel, or "issue preclusion," "precludes a party from relitigating an issue previously decided against it in a proceeding where there was a fair opportunity to fully litigate the matter." *Alliance Network, LLC*, 987 N.Y.S. 2d at 811-812 (internal citation omitted). Under New York law, "collateral estoppel applies in a later proceeding if (i) there is an identity of issue

that has necessarily been determined in the prior proceeding, and (ii) the party estopped had a full and fair opportunity to litigate the issue in the first proceeding. *Board of Managers of the 195 Hudson Street Condominium v. Jeffrey M. Brown Assocs., Inc*., 652 F. Supp. 2d 463, 473 (S.D.N.Y. 2009). "The doctrine, however, is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities." *Buechel v. Bain*, 97 N.Y.2d 295, 304, 766 N.E.2d 914, 740 N.Y.S.2d 252, 257 (2001). "In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of . . . fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible,  because even these factors may vary in relative importance depending on the nature of the proceedings . . . ." *Id*. (citation omitted).

The party asserting collateral estoppel must establish that the identical issue was necessarily decided in the prior proceeding. *Id*. If the movant meets its burden, the party to be estopped has the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination. *Id*.  Notably, collateral estoppel was applied in the *Alliance Network* litigation to bar the plaintiff's attempt to relitigate its claims against the presumed alter-ego defendant. With respect to the topic of collateral estoppel, the Court succinctly noted as follows:

> Again, the breach of contract claims asserted here [against the Alliance Brothers] are the precise claims litigated by the Alliance Companies against NAMA in the arbitration. The Alliance Companies Plaintiffs do not argue that they lacked the opportunity to litigate these claims; instead, they argue that these claims are viable against the Alliance Brothers under an alter ego theory, since they were not parties to the arbitration. However, Plaintiffs' alter ego theory fails to salvage these [sic] claim. Instead, these claims seek to impose liability on the Alliance Brothers for actions purportedly committed by NAMA, notwithstanding the fact that the arbitration decision already decided the same issues giving rise to the same claims and awarded Plaintiffs no damages.

21

> Accordingly, if not already dismissed on *res judicata* grounds,
> [such claims] would be barred by collateral estoppel.

*Id*. at 811-812.

As set forth in detail above, the facts and procedural background of the EDTx and SDTx proceedings make clear that the doctrine of collateral estoppel is equally applicable to this case. First, there is certainly an identity of issue that was determined in the prior proceedings, *i.e.*, whether the evidence, documents, and testimony presented were sufficient to pierce Primera's corporate veil. District Judge Clark examined the very same evidence and determined that it was insufficient to pierce the corporate veil of Primera. Plaintiff d'Amico had a full and fair opportunity to litigate the issue in the prior proceedings.

Plaintiff should not be entitled to continue to seek to add new names as alleged corporate alter-egos when it has no basis in fact or law and no evidence to sustain such allegations. As the Supreme Court of the United States noted,

> Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.' *Kerotest Mfg. Co. v. C-O-Two Co*., 342 U.S. 180, 185 (1952).

*Blonder-Tongue Labs. v. University of Illinois Found*., 402 U.S. 313, 329 (U.S. 1971). Defensive collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979) (citing *Bernhard v. Bank of America Nat. Trust & Savings Assn.*, 19 Cal. 2d 807, 813, 122 P. 2d 892, 895 (1942)). In this action, it is undisputed that d'Amico, the party against whom the defenses of res judicata and collateral estoppel are being raised, "had been the plaintiff in the prior suit . . . [and] had chosen the forum . . . and the party or parties from whom relief had been sought." *Somerville House Management, Ltd. v. Arts & Entertainment Television Network*, 1993 U.S. Dist. LEXIS 5534, *9

22

(S.D.N.Y. 1993) (citations omitted). It is also undisputed that d'Amico "had a prior opportunity to raise all claims related to the disputed transaction" and that the same alter-ego allegations are asserted in all three (3) actions. *Id*. (citing with approval *Blonder-Tongue Labs,* and permitting defendants who were not parties to the original suit, but alleged to be co-conspirators, to invoke collateral estoppel to dismiss the second action).   Respectfully, this Honorable Court should grant judgment on the pleadings in favor of moving Defendants on the basis of collateral estoppel.

<u>CONCLUSION</u>

WHEREFORE, based upon the foregoing, the accompanying Declaration of George M. Chalos, and what may be added at oral argument (if any), it is respectfully requested that this Honorable Court issue an Order granting judgment in favor of moving Defendants pursuant to Fed. R. Civ. P. 12(c) and 54(b).  Defendants further request that the Court grant such other and further relief as it deems just and proper under the circumstances, including an award of its legal fees and expenses, expended in contesting this action.

Respectfully Submitted,

CHALOS & Co, P.C.                          BLANK ROME LLP

<u>/s/ George M. Chalos</u>                         <u>/s/William R, Bennett, III</u>
George M. Chalos (GC 8693)             William R. Bennett, III, Esq. (WB 1383)
Briton P. Sparkman (BS 5220)           405 Lexington Ave.
55 Hamilton Avenue                          The Chrysler Bldg.
Oyster Bay, NY 11771                        New York, NY 10174
Tel: 516.714.4300                              Tel: 212.885.5152
gmc@chaloslaw.com                          wbennett@blankrome.com
bsparkman@chaloslaw.com

## <u>CERFICATE OF SERVICE</u>

I hereby certify that on May 29, 2015 a copy of the foregoing was filed electronically served on all parties and counsel of record through the cm/ECF system.

<u>/s/ George M. Chalos</u>
George M. Chalos