UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

D'AMICO DRY LTD.,

                    Plaintiff,              09 Cv. 7840 (JGK)

        - against -                         OPINION AND ORDER

PRIMERA MARITIME (HELLAS) LTD., ET
AL.,

                    Defendants.
————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiff, d'Amico Dry Limited ("d'Amico"), a foreign

shipping company, initially brought this action against Primera

Maritime (Hellas) Limited ("Primera") to enforce a money

judgment issued by the English High Court of Justice (the

"English Judgment").  Thereafter, d'Amico amended its complaint

to add numerous other individual and corporate defendants (the

"alter ego defendants"), seeking to hold them liable for the

English Judgment on the grounds that they are Primera's alter

egos.  Sixteen of the alter ego defendants now jointly move to

dismiss the claims against them pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure, arguing that the plaintiff's

action against them is claim and issue precluded by decisions of

the United States District Courts for the Eastern and Southern

Districts of Texas.  For the reasons that follow, the

defendants' motion is **denied.**

## I.

The standards to be applied to a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are the same as those applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  "Thus, [a court] will accept all factual allegations in the complaint as true and draw all reasonable inferences in [the] plaintiff[']s[ ] favor.  To survive a Rule 12(c) motion, [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).  In deciding such a motion, the court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that either are in the plaintiff's possession or were known to the plaintiff when the plaintiff brought suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Morillo v. Grand Hyatt New York, No. 13cv7123, 2014 WL 3498663, at *6 (S.D.N.Y. July 10, 2014).

## II.

In September 2009, d'Amico brought this action seeking to enforce the English Judgment that d'Amico had been awarded as a result of the alleged breach of a derivative financial contract, called a Forward Freight Agreement ("FFA"), that d'Amico had entered into with Primera.  The parties have disputed and still dispute whether this Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333 to enforce the English Judgment. See D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., No. 09cv7840, 2011 WL 1239861, at *1-2 (S.D.N.Y. Mar. 28, 2011) (granting defendants' motion to dismiss for lack of subject matter jurisdiction because the Egnlish Court was not sitting as an admiralty court and the plaintiff's claim was not maritime in nature under English law), vacated, 756 F.3d 151, 158 (2d Cir. 2014) (holding that United States law, not foreign law, determines whether a claim is maritime in nature for purposes of enforcing a foreign judgment based on that claim); Order Dated Mar. 31, 2015 (ECF No. 170) (denying defendants' second motion to dismiss for lack of subject matter jurisdiction).  The factual background underlying d'Amico's claim against Primera is recounted in those decisions.  The following factual and procedural background is provided for its relevance to the current motion.

**A.**

On December 20, 2010, this Court granted d'Amico leave to amend its Complaint, and d'Amico filed its Verified Amended Complaint ("VAC"). The VAC named twenty alter ego defendants, including two individuals and eighteen corporate entities. In the VAC, d'Amico alleged that all of the corporate defendants are "alter egos of Defendant Primera because Primera dominates and disregards their corporate forms to the extent that Primera is actually carrying on the business and operations" of the corporate defendants. VAC ¶¶ 20, 37, 59, 71, 81.

The VAC organizes the alter ego defendants into five smaller groups, based on each group's alleged close relationship with Primera. In Section I, d'Amico alleges that several defendants share the same address, fax number, and registered address, and that they are all controlled by defendants Paul and Nikolaos Coronis. Id. ¶¶ 23-26. According to d'Amico, the corporate defendants all took out a loan as joint and several borrowers pursuant to a "May Facilities Agreement" in order to finance shared vessels, and Primera was the corporate guarantor for the loan. Id. ¶¶ 29-30.

Section II makes similar allegations for a separate group of alter ego defendants, alleging that they share a common address and phone and fax numbers. Id. ¶¶ 37-42. In this

4

Section, d'Amico alleges that this group entered into an "April Facilities Agreement" to finance two different shared vessels. Id. ¶ 45.  Section II also alleges that three alter ego defendants signed an "ISDA Agreement," in which they were all to "be regarded as one party."  Id. ¶¶ 52-54.  Finally, Sections III, IV, and V make similar allegations of shared control and relatedness between Primera and other alter ego defendants.  See id. ¶¶ 59-88.  For example, d'Amico alleges that another group of alter ego defendants were made parties and guarantors to the May Facilities Agreement in a supplemental agreement, but that the contact information remained as only Primera's.  Id. ¶¶ 64-67.

On March 31, 2015, the Court issued a scheduling order, setting the date for the end of all discovery as September 4, 2015.  Soon after, the alter ego defendants requested a pre-motion conference in order to stay discovery on the alter ego issues, and to file the present motion to dismiss.  On May 20, 2015, the Court held a conference and issued an order staying discovery on the issue of alter egos until July 6, 2015.  See Order Dated May 20, 2015 (ECF No. 184).  On May 29, 2015, sixteen of the corporate alter ego defendants (the "moving defendants") filed the present joint motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.[1]  The Court has not renewed the stay of discovery and has set a new date for the completion of discovery.

The defendants move for dismissal of the VAC based on two grounds alone: (1) res judicata, or claim preclusion, based on decisions from the United States District Courts for the Eastern and Southern Districts of Texas; and (2) collateral estoppel, or issue preclusion, based on the same decisions.  The defendants argue that the issue of whether the moving defendants are Primera's alter egos has already been decided by those two Texas federal courts and thus precludes d'Amico's claims against them.

**B.**

In May 2010, non-party Flame SA filed an *in rem* complaint and a writ of arrest against a vessel, the M/V Lynx, in the United States District Court for the Eastern District of Texas, and arrested the vessel.  See Thompson Decl. ¶¶ 3-6; Flame S.A. v. M/V Lynx, No. 10cv278 (E.D. Tex. 2010).  Flame sought to enforce a separate English Judgment that it had been awarded by arresting the Lynx, which was owned by non-party Camela Navigation, Inc. ("Camela"), an alleged alter ego of Primera.

---

[1] Though moving jointly, the defendants are separated into two groups, each represented by different counsel.  One group includes seven defendants, with defendant Adalia Marine Co. Ltd. named first on their briefs (the "Adalia defendants"), and one group includes nine defendants, with defendant Sonic Finance Inc. named first on their briefs (the "Sonic defendants").

6

Camela appeared in the action shortly thereafter and moved to vacate the attachment.  On June 22, 2010, Judge Clark of the Eastern District issued a decision denying Camela's motion to vacate.  Flame S.A. v. M/V Lynx, No. 10cv278, 2010 WL 10861354, at *1 (E.D. Tex. June 22, 2010).  The decision came after the court held two hearings, and it included detailed findings of fact as to the relationship between Camela and Primera.  Id. at *1, *4-11.  After assessing the twelve factors for alter ego determinations under Fifth Circuit law, the court concluded that Flame had met its burden of showing that Camela was Primera's alter ego, and therefore denied the motion to vacate the attachment.  Id. at *13.

On June 25, 2010, d'Amico filed an intervening complaint in the Eastern District of Texas action.  Thompson Decl. ¶ 10, Ex. 6.  The intervening complaint sought to enforce the English Judgment at issue in this action, and named only Camela and Primera as defendants.  Id. Ex. 6.  Neither defendant ever responded to d'Amico's complaint.  Id. ¶ 12.  On July 27, 2010, a trial was held on the alter ego issue.  Id.  On August 5, 2010, Flame and Camela entered into a Stipulation and Order of Dismissal agreeing that Flame would dismiss its claims with prejudice and vacate its arrest of the Lynx.  Id. ¶ 13, Ex. 8.

7

The following day, the district court issued a 31-page
opinion entitled Findings of Fact and Conclusions of Law on
Alter Ego.  Id. ¶ 14, Ex. 9.  The court weighed the evidence of
the relationship between Primera and Camela, including, among
other things, their "overlapping ownership," "overlapping
management," their lack of consolidated financial statements,
and the fact that Camela operated with "inadequate capital," but
not "grossly inadequate capital."  Id. Ex. 9, at 13, 17, 20, 23-
24.  Ultimately, the court concluded that it was a "close
question," but that "there is insufficient evidence in the
record to establish, by a preponderance of the evidence, that
Camela is Primera's alter ego."  Id. at 29.  The court noted
that the warrant of arrest obtained by Flame had already been
vacated, and ordered that d'Amico's writ of attachment be
vacated, as well as the warrant of arrest of another intervenor.
Id. at 30-31.

On August 31, 2010, prior to either defendant ever filing a
response to d'Amico's complaint, d'Amico filed a notice of
voluntary dismissal of its complaint pursuant to Rule 41(a)(1)
of the Federal Rules of Civil Procedure.  Id. Ex. 11.  The
following day, the district court ordered the dismissal of
d'Amico's claims without prejudice.  Id.

8

## C.

In January 2015, d'Amico filed a complaint in the United States District Court for the Southern District of Texas against Pasha Finance, Inc. ("Pasha"), one of the moving defendants in this action.  Tisdale Decl. Ex. 1.  D'Amico sought to enforce the English Judgment against Pasha, which it alleged was Primera's alter ego.  D'Amico attached a vessel owned by Pasha, the M/T Cape Talara, pursuant to Supplemental Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. Id.  The complaint named no defendant other than Pasha.

On January 16, 2015, shortly after d'Amico filed the complaint, the district court held a hearing pursuant to Supplemental Rule E(4)(f) to determine whether the Rule B attachment should be vacated.  Chalos Decl. Ex. C (Hearing Tr., Jan. 16, 2015).  Only d'Amico and Pasha appeared at that hearing.  Id.  Initially, the parties discussed whether d'Amico, as petitioner, should provide a counter-security for its arrest of the vessel.  Id. at 9.  Judge Ellison, the District Court Judge, expressed concern throughout the hearing that Pasha would not have "some redress" if the seizure turned out to be improper, and noted that it would take time to resolve the "fact sensitive" alter ego issue.  Id. at 15, 17-19.

9

Later in the hearing, the court expressed its "inclination
. . . to vacate the seizure" because there were "too many
uncertainties" as to whether there was probable cause for the
attachment.  Id. at 30.  The court stated that the "biggest
issue" was the alter ego issue, which the court noted was a
"very difficult issue" which might not be resolved "even after
abbreviated discovery."  Id.  After the court expressed doubts
about whether there was sufficient evidence of an alter ego
relationship, id. at 44, the court ultimately announced that it
would vacate the seizure.  Id. at 52.  The court issued an order
the same day granting Pasha's motion to vacate the Rule B
attachment of its vessel.  Tisdale Decl. Ex. 2.  In April 2015,
d'Amico moved to voluntarily dismiss its claims against Pasha
without prejudice pursuant to Rule 41, and the court granted
d'Amico's motion, dismissing its claims without prejudice.  Id.
Ex. 3.

### III.

The moving defendants now come to this Court brandishing
the above two decisions and seeking judgment dismissing the
alter ego claims against them.  The defendants gloss over the
fact that both decisions are preliminary, fact-intensive, and
collectively only pertain to one of the sixteen moving
defendants.  The defendants request that the Court, based solely

on these two decisions and without considering any evidence
regarding the defendants in this case, grant judgment as a
matter of law dismissing all sixteen defendants from the action.
As explained below, this request is entirely without merit.

**A.**

The defendants argue that the two Texas decisions should
have claim preclusive effect and bar the plaintiff from bringing
the present claims.[2]

Federal law determines the preclusive effect of a federal
judgment.  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286
(2d Cir. 2002).  "The doctrine of res judicata, or claim
preclusion, holds that a final judgment on the merits of an
action precludes the parties or their privies from relitigating
issues that were or could have been raised in that action."
ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 547 F.3d 109, 112 n.2
(2d Cir. 2008) (quoting Monahan v. New York City Dep't of Corr.,
214 F.3d 275, 284 (2d Cir. 2000)).  Thus, an earlier judgment
bars future litigation if it was "(1) a final judgment on the
merits, (2) by a court of competent jurisdiction, (3) in a case

---

[2] The defendants moved jointly and do not differentiate between groups of
defendants in their briefs. However, at oral argument, counsel for the Sonic
defendants backed off from the claim preclusion arguments in the brief,
stating that they were only moving on the basis of issue preclusion.  July
20, 2015, Hr'g Tr. 37-38.  And counsel for the Adalia defendants appeared to
concede that the decision by Judge Ellison of the Southern District of Texas
had no issue or claim preclusive effect.  Id. at 29.

11

involving the same parties or their privies, and (4) involving the same cause of action." EDP Med. Computer Sys. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (quoting In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985)).

Aside from the second factor, none of the requirements of claim preclusion are met for either Texas decision. Judge Clark of the Eastern District of Texas vacated the writ of attachment of Camela's vessel, concluding by a preponderance of the evidence that Flame had not established that Camela was Primera's alter ego. Thompson Decl. Ex. 9. Judge Ellison concluded at a Supplemental Rule E(4)(f) conference that d'Amico had not met the requirements of Rules B and E, and vacated the writ of attachment of Pasha's vessel. In both cases, d'Amico voluntarily dismissed its claims without prejudice shortly after the decisions.

"A cornerstone of the res judicata doctrine is the requirement that the prior decision be final." McGuiggan v. CPC Int'l, Inc., 84 F. Supp. 2d 470, 477 (S.D.N.Y. 2000). The parties have not cited any case discussing whether the vacatur of a Rule B attachment is a final judgment for purposes of claim preclusion. However, in a similar context, orders confirming or refusing to confirm an attachment pursuant to the Foreign Sovereign Immunities Act ("FSIA") are "in no way final," and

thus "the denial of an application to confirm [an attachment] will not preclude a subsequent attachment proceeding where there has been an intervening change of circumstances." NML Capital, Ltd. v. Banco Cent. de la Republica Arg., 652 F.3d 172, 185 (2d Cir. 2011) (quoting Dayco Corp. v. Foreign Transactions Corp., 705 F.2d 38, 39 (2d Cir. 1983)). "Indeed, it is well-settled that judgment creditors can file successive attachment motions before final judgment has been entered in the underlying suit." Id. The same logic underlying FSIA attachment motions should be applicable to the attachment of vessels under Rule B. In this case, the plaintiff should not be barred from filing additional Rule B attachment motions to enforce the English Judgment simply because it filed one previously. Moreover, that the plaintiff's claims were dismissed without prejudice further bolsters the lack of finality of the Texas proceedings. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990) ("'[D]ismissal . . . without prejudice' [under Rule 41(a)(1)] is a dismissal that does not 'operat[e] as an adjudication upon the merits,' . . . and thus does not have a res judicata effect.").[3]

---

[3] Counsel for d'Amico conceded that the decision in the Eastern District of Texas may have been final as to Flame's claim against Primera and Camela because Flame had the opportunity for a trial on the merits of whether Camela was the alter ego of Primera. July 20 Hr'g Tr. 48. But d'Amico argues that there was no final decision as to d'Amico because neither Primera nor Camela answered the intervention complaint and d'Amico dismissed the complaint without prejudice. In any event, as explained below, the claims in the Eastern District of Texas action are not the same as the claims in this case.

Moreover, this case does not involve the same parties or their privies.  Not a single moving defendant appeared in the Eastern District litigation, and only Pasha appeared in the Southern District litigation.  The sixteen moving defendants argue that they should all be treated as in privity with Camela and/or Pasha because the plaintiff alleges that the moving defendants are alter egos with Primera.  "[T]he principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion."  Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995).  "[T]he issue of privity is to a great extent a factual question, and yet it is being presented now in the context of a motion for judgment on the pleadings."  Badger v. Berritto, No. 99cv12463, 2000 WL 1721135, at *3 (S.D.N.Y. Nov. 17, 2000) (rejecting claim preclusion argument).  In this motion for judgment on the pleadings, the Court cannot conclude that all sixteen defendants are in privity with Camela and/or Pasha based solely on the plaintiff's allegations, which the defendants deny, that the defendants are in privity with

14

Primera.[4]  Accordingly, the defendants have not demonstrated that privity existed for purposes of claim preclusion.

Finally, the claims in the actions in the Eastern and Southern Districts of Texas are fundamentally different from those at issue here, despite many similarities in their factual predicates.  "Whether a claim that was not raised in the previous action could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'"  TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014) (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992)).

The defendants argue that Judge Clark and Judge Ellison were considering all of the same evidence that is at issue here, such as the April and May Facilities Agreements.  But the evidence in those cases was only presented as to Camela, a nonparty here, and as to Pasha, respectively.  Because the fifteen other moving defendants were not present, the plaintiff plainly had no incentive to marshal evidence against them in the two Texas proceedings.  Indeed, analyzing whether the moving

---

[4] Indeed, when Pasha's counsel raised during argument the Eastern District of Texas court's finding that Camela and Primera were not alter egos, Judge Ellison noted, "I don't know how much help that is to me.  It wasn't Pasha." Chalos Decl. Ex. C, at 32.

15

defendants are Primera's alter egos requires looking at
relationships that are distinct from those concerning whether
Camela or Pasha is Primera's alter ego.  "The determination of
alter-ego liability is a fact-intensive inquiry, whose primary
concerns are '(1) whether the entities in question operated as a
single economic entity, and (2) whether there was an overall
element of injustice or unfairness.'"  Milestone Shipping, S.A.
v. Estech Trading LLC, 764 F. Supp. 2d 632, 636 (S.D.N.Y. 2011)
(quoting NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d
168, 177 (2d Cir. 2008)).

Looking only at the relationship between Camela and Primera
based on twelve factors prescribed by Fifth Circuit case law,
Judge Clark concluded that it was a "close question" whether
Flame had established that Camela was Primera's alter ego.
Thompson Decl. Ex. 9, at 29; see also Oxford Capital Corp. v.
United States, 211 F.3d 280, 284 n.2 (5th Cir. 2000) (listing
twelve factors).  At the Rule E hearing in the Southern
District, Judge Ellison noted that the alter ego issue was "such
a fact sensitive issue" and could require significant discovery,
and concluded that the plaintiff had not made the required
showing at that time.  Chalos Decl. Ex. C, at 15.  These two
close, fact-intensive decisions demonstrate that there would
have been no reason for the plaintiff to introduce evidence or

bring claims against any of the moving defendants that were absent in those proceedings.  And although Pasha was present in the Southern District of Texas proceeding, that proceeding is not claim preclusive due to its lack of finality.

In sum, the plaintiff could not have raised its present alter ego claims against the moving defendants in the litigation in either the Eastern or Southern District of Texas, and its claims are not barred by Judge Clark's decision issued August 6, 2010, or Judge Ellison's order issued January 16, 2015.

**B.**

In the alternative, the defendants argue that the two Texas decisions should have issue preclusive effect as to the alter ego issue.

Collateral estoppel, or issue preclusion, applies when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits." Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008).  Issue and claim preclusion are "two separate and distinct wings of preclusion law." N. Assur. Co. of Am. v. Square D Co., 201 F.3d 84, 87 n.2 (2d Cir. 2000).  However, they

17

are "related doctrine[s]," <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 139 (2d Cir. 2000), and the defendants raise essentially the same arguments in support of their claim of issue preclusion.  For similar reasons, those arguments are without merit.

"Use of collateral estoppel 'must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.'" <u>Faulkner v. Nat'l Geographic Enters. Inc.</u>, 409 F.3d 26, 37 (2d Cir. 2005) (quoting <u>Comm'r v. Sunnen</u>, 333 U.S. 591, 599-600 (1948)).  The matter in the present litigation is identical in few, if any, respects with the Texas proceedings, and the controlling facts and legal rules are changed.  The controlling facts in the Eastern and Southern District litigation pertained to Primera's relationship with Camela and Pasha, respectively. The controlling facts in this litigation pertain to the relationship between Primera and the twenty alter ego defendants.

Moreover, both Texas decisions applied a different burden of proof than the notice pleading standard on the current 12(c) motion.  Judge Clark analyzed by a preponderance of the evidence whether it had been shown that Camela is Primera's alter ego.

18

Thompson Decl. Ex. 9.  Judge Ellison applied the Rule E standards, which are also more stringent than the standards for the current motion.  See Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) ("Ordinary notice pleading does not satisfy the stringencies of these rules.") (quoting Puerto Rico Ports Auth. v. BARGE KATY-B, 427 F.3d 93, 105 (1st Cir. 2005)).  Although "a shift in the burden of proof is not dispositive as to whether collateral estoppel can be applied," Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 732 (2d Cir. 2001), the shifting burdens are relevant here because the issues in the prior decisions were close questions and highly fact dependent.

Moreover, at least with respect to Judge Ellison's decision vacating the plaintiff's Rule B attachment, there is insufficient finality to have issue preclusive effect.  Although claim preclusion only applies "when a final judgment is rendered," issue preclusion may apply to a decision that is "sufficiently firm to be accorded conclusive effect."  United States v. McGann, 951 F. Supp. 372, 380 (E.D.N.Y. 1997) (quoting Restatement (Second) of Judgments, § 13 (1982)); see also Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000) ("It is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion.").

Judge Ellison's purportedly preclusive holding came during a hearing held pursuant to Supplemental Rule E(4)(f) to determine whether the plaintiff's Rule B attachment of Pasha's vessel should be vacated.  The parties have not cited to any cases on whether the vacatur of a Rule B attachment is sufficiently final for purposes of issue preclusion.[5]  However, the defendants argue that the decision was "practically final" under the standards articulated by Judge Friendly in Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80 (2d Cir. 1961).

In Lummus, Judge Friendly held that the question whether a judgment that is "otherwise "not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it

---

[5] The plaintiff cites to Europa Mar. S.A. v. Manganese Trans Atl. Corp., 441 F. App'x 814 (2d Cir. 2011) (summary order), a case in which the Second Circuit Court of Appeals held that the denial of a motion to vacate a Rule B attachment "is not a 'final order' for the purposes of appellate review, because it did not 'end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment.'"  Id. at 815 (quoting Wabtec Corp. v. Faiveley Trans. Malmo AB, 525 F.3d 135, 137 (2d Cir. 2008)).  While the finality of a judgment for purposes of appeal is instructive as to its finality for issue preclusion purposes, Europa is not helpful because it deals with the denial of a motion to vacate a Rule B attachment. Id.; see also Indagro S.A. v. Bauche S.A., 652 F. Supp. 2d 482, 487-88 (S.D.N.Y. 2009) (holding that denial of motion to vacate maritime attachment is not preclusive, in large part due to unavailability of review).  By contrast, the Court of Appeals has appellate jurisdiction over a district court's vacatur of a maritime attachment "under the 'collateral order' exception to 28 U.S.C. § 1291." Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91 n.5 (2d Cir. 2009).

was not avowedly tentative), the adequacy of the hearing, and
the opportunity for review." Id. at 89.  The Court in Lummus
held that a decision by the First Circuit Court of Appeals
satisfied all of those factors, id. at 89-90, and therefore the
Court "recognized the collateral estoppel effect to be accorded"
to that decision.  In re Ojeda Rios, 863 F.2d 202, 204 (2d Cir.
1988).  The question in this case is whether either decision
vacating a Rule B attachment was "practically final" for
purposes of issue preclusion based on the Lummus factors.  See
B.N.E., Swedbank, S.A. v. Banker, 791 F. Supp. 1002, 1006
(S.D.N.Y. 1992) (concluding that the Magistrate Judge's decision
dissolving attachment was "practically final" for issue
preclusion purposes due in part to the length and scope of the
hearing held beforehand).

Supplemental Rule E(4)(f) entitles the owner of an arrested
vessel to an initial "prompt post-seizure hearing" at which they
may "contest the validity of the seizure."  See Aqua Stoli
Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 440 (2d
Cir. 2006), overruled on other grounds by Shipping Corp. of
India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir.
2009).  A court may vacate the Rule B attachment of a vessel
after the hearing if the plaintiff has not met its burden to
show that it satisfied Rule B and Rule E's requirements, and in

21

"other limited circumstances." Id. at 445.  A "rule E(4)(f)
hearing is not intended to definitely resolve the dispute
between the parties." Wajilam Exps., 475 F. Supp. 2d at 279.
Rather, courts "make a preliminary determination of whether
there are reasonable grounds for issuance of the arrest
warrant." Id. (quoting North of Eng. Protecting & Indem. Ass'n
v. M/V Nara, No. CIV. A. 99-0464, 1999 WL 33116416, at *2 (E.D.
La. 1999)).  Such a preliminary determination should generally
not be given preclusive effect.  Cf. Irish Lesbian & Gay Org. v.
Giuliani, 143 F.3d 638, 644 (2d Cir. 1998) ("Ordinarily,
findings of fact and conclusions of law made in a preliminary
injunction proceeding do not preclude reexamination of the
merits at a subsequent trial.").

There may be instances where a court vacates a Rule B
attachment after allowing the parties sufficient discovery,
holding a trial, and making sufficiently definite findings so as
to meet the Lummus category of non-final yet preclusive orders.[6]
But Judge Ellison's ruling does not fall anywhere near this

---

[6] Judge Clark's decision in the Eastern District litigation, which followed
his initial denial of the motion to vacate, discovery, and a trial, and
included 31 pages of factual and legal analysis, may be closer than Judge
Ellison's decision to presenting such an example.  Indeed, the plaintiff
conceded at oral argument that Judge Clark's decision was a trial on the
merits as to Flame, and stated that Judge Clark's decision was the reason
that the plaintiff did not name Camela in this litigation.  July 20 Hr'g Tr.
47-48.  Because Judge Clark's decision has no preclusive effect on the
plaintiff's claims for other reasons, the Court need not determine whether it
has sufficient indicia of finality to be otherwise preclusive.

limited category.  The hearing was held one week after the plaintiff filed its complaint, and there was no discovery conducted.  Judge Ellison's findings were expressly preliminary and "avowedly tentative." Lummus, 297 F.2d at 89.  For example, he repeatedly expressed concern about the length of time it would take to resolve the "fact sensitive" alter ego issue.  See Chalos Decl. Ex. C, at 15, 17, 30.  The district court subsequently issued a one-page order vacating the Rule B attachment following that hearing, and the plaintiff eventually dismissed its claims without prejudice.  Accordingly, that decision is not sufficiently final to preclude the plaintiff's claims.

For the foregoing reasons, the defendants have not shown that either claim or issue preclusion bars the plaintiff's claims against them in this litigation.  Accordingly, the defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is **denied.**

## IV.

The plaintiff moves for sanctions against the defendants pursuant to 28 U.S.C. § 1927 and the Court's inherent authority on the grounds that this motion is frivolous.  The plaintiff requests the attorneys' fees the plaintiff incurred in responding to the motion.

23

The Court has discretion in deciding whether to impose sanctions under 28 U.S.C. § 1927 and the Court's inherent power. See Schutte Bagclosures Inc. v. Kwik Lok Corp., No. 12cv5541, 2014 WL 6860294, at *1 (S.D.N.Y. Dec. 5, 2014).  At the pre-motion conference held on May 20, 2015, the defense counsel assured the Court it had a meritorious claim for preclusion, in part because "many of the defendants [in this action] were defendants in [the Eastern District of Texas] action."  See Tisdale Decl. Ex. 4, at 32.  On the basis of that representation, the Court stayed discovery. Even in the defendants' initial brief, they papered over the fact that actually, zero defendants in this action were present in the Eastern District of Texas action.  The defendants' representations in this motion bordered on misleading, and the motion is completely without merit.

Nevertheless, the Court exercises its discretion not to impose sanctions because there are insufficient signs of bad faith on the defendants' part.  Furthermore, the actual delay occasioned by this motion and the attorney's fees involved in opposing it are not so substantial as to cause the Court to exercise its discretion to impose sanctions.  Accordingly, the plaintiff's request for sanctions is **denied.**

24

### Conclusion

To the extent not specifically addressed above, any remaining arguments are either moot or without merit.  For the reasons explained above, the moving defendants' motion for judgment on the pleadings dismissing the plaintiff's claims is **denied.  The Clerk is directed to close Docket Nos. 183, 185, and 199.**


**SO ORDERED.**

**Dated:      New York, New York**
**           July 29, 2015**                    _____/s/_____
                                                  **John G. Koeltl**
                                       **United States District Judge**